# WARSAW CONVENTION[1], 1929, AS AMENDED AT THE HAGUE, 1955[2] AND BY PROTOCOL No. 4 OF MONTREAL, 1975[3]

## UNIFIED TEXT

### CHAPTER I

#### Scope — Definitions

#### Article 1

1. This Convention applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward. It applies equally to gratuitous carriage by aircraft performed by an air transport undertaking.

2. For the purposes of this Convention, the expression *international carriage* means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two High Contracting Parties or within the territory of a single High Contracting Party if there is an agreed stopping place within the territory of another State, even if that State is not a High Contracting Party. Carriage between two points within the territory of a single High Contracting Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

3. Carriage to be performed by several successive air carriers is deemed, for the purposes of this Convention, to be one undivided carriage if it has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts, and it does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same State.

#### Article 2

1. This Convention applies to carriage performed by the State or by legally constituted public bodies provided it falls within the conditions laid down in Article 1.

2. In the carriage of postal items the carrier shall be liable only to the relevant postal administration in accordance with the rules applicable to the relationship between the carriers and the postal administrations.

3. Except as provided in paragraph 2 of this Article, the provisions of this Convention shall not apply to the carriage of postal items.

### CHAPTER II
### DOCUMENTS OF CARRIAGE

#### SECTION I — Passenger Ticket

#### Article 3

1. In respect of the carriage of passengers a ticket shall be delivered containing:

   a) an indication of the places of departure and destination;

   b) if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

   c) a notice to the effect that, if the passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

2. The passenger ticket shall constitute *prima facie* evidence of the conclusion and conditions of the contract of carriage. The absence, irregularity or loss of the passenger ticket does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if, with the consent of the carrier, the passenger embarks without a passenger ticket having been delivered, or if the ticket does not include the notice required by paragraph 1 c) of this Article, the carrier shall not be entitled to avail himself of the provisions of Article 22.

#### SECTION II — Baggage Check

#### Article 4

1. In respect of the carriage of registered baggage, a baggage check shall be delivered, which, unless combined with or incorporated in a passenger ticket which complies with the provisions of Article 3, paragraph 1, shall contain:

---

[1] The French text is the only authoritative text of the Warsaw Convention; a copy is at Section 5.1 of this booklet. The translation presented here is that followed by the United Kingdom [Carriage by Air Act 1961]. The translation currently used in the United States is at Section 5.4. *[PN]*

[2] ICAO Doc. 7632. Done in three authentic texts in the English, French and Spanish languages. In the case of any inconsistency, the text in the French language, in which language the Warsaw Convention was drawn up, shall prevail. *[PN]*

[3] ICAO Doc. 9148. Done in four authentic texts in the English, French, Russian and Spanish languages. In the case of any inconsistency, the text in the French language, in which language the Warsaw Convention was drawn up, shall prevail. *[PN]*

a) an indication of the places of departure and destination;

b) if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

c) a notice to the effect that, if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to baggage.

2. The baggage check shall constitute *prima facie* evidence of the registration of the baggage and of the conditions of the contract of carriage. The absence, irregularity or loss of the baggage check does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if the carrier takes charge of the baggage without a baggage check having been delivered or if the baggage check (unless combined with or incorporated in the passenger ticket which complies with the provisions of Article 3, paragraph 1 c)) does not include the notice required by paragraph 1 c) of this Article, he shall not be entitled to avail himself of the provisions of Article 22, paragraph 2.

### Section III — Documentation Relating to Cargo

#### Article 5

1. In respect of the carriage of cargo an air waybill shall be delivered.

2. Any other means which would preserve a record of the carriage to be performed may, with the consent of the consignor, be substituted for the delivery of an air waybill. If such other means are used, the carrier shall, if so requested by the consignor, deliver to the consignor a receipt for the cargo permitting identification of the consignment and access to the information contained in the record preserved by such other means.

3. The impossibility of using, at points of transit and destination, the other means which would preserve the record of the carriage referred to in paragraph 2 of this Article does not entitle the carrier to refuse to accept the cargo for carriage.

#### Article 6

1. The air waybill shall be made out by the consignor in three original parts.

2. The first part shall be marked "for the carrier"; it shall be signed by the consignor. The second part shall be marked "for the consignee"; it shall be signed by the consignor and by the carrier. The third part shall be signed by the carrier and handed by him to the consignor after the cargo has been accepted.

3. The signature of the carrier and that of the consignor may be printed or stamped.

4. If, at the request of the consignor, the carrier makes out the air waybill, he shall be deemed, subject to proof to the contrary, to have done so on behalf of the consignor.

#### Article 7

When there is more than one package:

a) the carrier of cargo has the right to require the consignor to make out separate air waybills;

b) the consignor has the right to require the carrier to deliver separate receipts when the other means referred to in paragraph 2 of Article 5 are used.

#### Article 8

The air waybill and the receipt for the cargo shall contain:

a) an indication of the places of departure and destination;

b) if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place; and

c) an indication of the weight of the consignment.

#### Article 9

Non-compliance with the provisions of Articles 5 to 8 shall not affect the existence or the validity of the contract of carriage, which shall, none the less, be subject to the rules of this Convention including those relating to limitation of liability.

#### Article 10

1. The consignor is responsible for the correctness of the particulars and statements relating to the cargo inserted by him or on his behalf in the air waybill or furnished by him or on his behalf to the carrier for insertion in the receipt for the cargo or for insertion in the record preserved by the other means referred to in paragraph 2 of Article 5.

2. The consignor shall indemnify the carrier against all damage suffered by him, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor or on his behalf.

3. Subject to the provisions of paragraphs 1 and 2 of this Article, the carrier shall indemnify the consignor against all damage suffered by him, or by any other person to whom the consignor is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements inserted by the carrier or on his behalf in the receipt

for the cargo or in the record preserved by the other means referred to in paragraph 2 of Article 5.

### Article 11

1. The air waybill or the receipt for the cargo is *prima facie* evidence of the conclusion of the contract, of the acceptance of the cargo and of the conditions of carriage mentioned therein.

2. Any statements in the air waybill or the receipt for the cargo relating to the weight, dimensions and packing of the cargo, as well as those relating to the number of packages, are *prima facie* evidence of the facts stated; those relating to the quantity, volume and condition of the cargo do not constitute evidence against the carrier except so far as they both have been, and are stated in the air waybill to have been, checked by him in the presence of the consignor, or relate to the apparent condition of the cargo.

### Article 12

1. Subject to his liability to carry out all his obligations under the contract of carriage, the consignor has the right to dispose of the cargo by withdrawing it at the airport of departure or destination, or by stopping it in the course of the journey on any landing, or by calling for it to be delivered at the place of destination or in the course of the journey to a person other than the consignee originally designated, or by requiring it to be returned to the airport of departure. He must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors and he must repay any expenses occasioned by the exercise of this right.

2. If it is impossible to carry out the orders of the consignor the carrier must so inform him forthwith.

3. If the carrier obeys the orders of the consignor for the disposition of the cargo without requiring the production of the part of the air waybill or the receipt for the cargo delivered to the latter, he will be liable, without prejudice to his right of recovery from the consignor, for any damage which may be caused thereby to any person who is lawfully in possession of that part of the air waybill or the receipt for the cargo.

4. The right conferred on the consignor ceases at the moment when that of the consignee begins in accordance with Article 13. Nevertheless, if the consignee declines to accept the cargo, or if he cannot be communicated with, the consignor resumes his right of disposition.

### Article 13

1. Except when the consignor has exercised his right under Article 12, the consignee is entitled, on arrival of the cargo at the place of destination, to require the carrier to deliver the cargo to him, on payment of the charges due and on complying with the conditions of carriage.

2. Unless it is otherwise agreed, it is the duty of the carrier to give notice to the consignee as soon as the cargo arrives.

3. If the carrier admits the loss of the cargo, or if the cargo has not arrived at the expiration of seven days after the date on which it ought to have arrived, the consignee is entitled to enforce against the carrier the rights which flow from the contract of carriage.





### Article 14

The consignor and the consignee can respectively enforce all the rights given them by Articles 12 and 13, each in his own name, whether he is acting in his own interest or in the interest of another, provided that he carries out the obligations imposed by the contract of carriage.

### Article 15

1. Articles 12, 13 and 14 do not affect either the relations of the consignor and the consignee with each other or the mutual relations of third parties whose rights are derived either from the consignor or from the consignee.

2. The provisions of Articles 12, 13 and 14 can only be varied by express provision in the air waybill or the receipt for the cargo.

### Article 16

1. The consignor must furnish such information and such documents as are necessary to meet the formalities of customs, octroi or police before the cargo can be delivered to the consignee. The consignor is liable to the carrier for any damage occasioned by the absence, insufficiency or irregularity of any such information or documents, unless the damage is due to the fault of the carrier, his servants or agents.

2. The carrier is under no obligation to enquire into the correctness or sufficiency of such information or documents.

## CHAPTER III

## Liability of the Carrier

### Article 17

The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

### Article 18

1. The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, any registered

baggage, if the occurrence which caused the damage so sustained took place during the carriage by air.

2. The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the occurrence which caused the damage so sustained took place during the carriage by air.

3. However, the carrier is not liable if he proves that the destruction, loss of, or damage to, the cargo resulted solely from one or more of the following:

a) inherent defect, quality or vice of that cargo;

b) defective packing of that cargo performed by a person other than the carrier or his servants or agents;

c) an act of war or an armed conflict;

d) an act of public authority carried out in connexion with the entry, exit or transit of the cargo.

4. The carriage by air within the meaning of the preceding paragraphs of this Article comprises the period during which the baggage or cargo is in the charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

5. The period of the carriage by air does not extend to any carriage by land, by sea or by river performed outside an airport. If, however, such carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air.

### Article 19

The carrier is liable for damage occasioned by delay in the transportation by air of passengers, baggage, or cargo.

### Article 20

In the carriage of passengers and baggage, and in the case of damage occasioned by delay in the carriage of cargo, the carrier shall not be liable if he proves that he and his servants and agents have taken all necessary measures to avoid the damage or that it was impossible for them to take such measures.

### Article 21

1. In the carriage of passengers and baggage, if the carrier proves that the damage was caused by or contributed to by the negligence of the person suffering the damage the Court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability.

2. In the carriage of cargo, if the carrier proves that the damage was caused by or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he derives his rights, the carrier shall be wholly or partly exonerated from his liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

### Article 22[4]

1. In the carriage of persons the liability of the carrier for each passenger is limited to the sum of two hundred and fifty thousand francs (*16 600 Special Drawing Rights*). Where, in accordance with the law of the Court seised of the case, damages may be awarded in the form of periodical payments, the equivalent capital value of the said payments shall not exceed two hundred and fifty thousand francs. Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability.

2. a) In the carriage of registered baggage, the liability of the carrier is limited to a sum of two hundred and fifty francs (*17 Special Drawing Rights*) per kilogramme, unless the passenger or consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the passenger's or consignor's actual interest in delivery at destination.

b) In the carriage of cargo, the liability of the carrier is limited to a sum of 17 Special Drawing Rights per kilogramme, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that the sum is greater than the consignor's actual interest in delivery at destination.

c) In the case of loss, damage or delay of part of registered baggage or cargo, or of any object contained therein, the weight to be taken into consideration in determining the amount to which the carrier's liability is limited shall be only the total weight of the package or packages concerned. Nevertheless, when the loss, damage or delay of a part of the registered baggage or cargo, or of an object contained therein, affects the value of other packages covered by the same baggage check or the same air waybill, the total weight of such package or packages shall also be taken into consideration in determining the limit of liability.

3. As regards objects of which the passenger takes charge himself the liability of the carrier is limited to five thousand francs (*332 Special Drawing Rights*) per passenger.

4. The limits prescribed in this article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the

[4] Montreal Additional Protocol No. 2 amends paragraphs 1, 2 and 3 of Article 22 by replacing the amounts expressed in francs by amounts expressed in Special Drawing Rights as indicated in italics. This Protocol also amends paragraph 5. (For amended text, see Section 5.7.) *[PN]*

other expenses of the litigation incurred by the plaintiff. The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of the litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later.

5. The sums mentioned in francs in this Article shall be deemed to refer to a currency unit consisting of sixty-five and a half milligrammes of gold of millesimal fineness nine hundred. These sums may be converted into national currencies in round figures. Conversion of the sums into national currencies other than gold shall, in case of judicial proceedings, be made according to the gold value of such currencies at the date of the judgment.

6. The sums mentioned in terms of the Special Drawing Right in this Article shall be deemed to refer to the Special Drawing Right as defined by the International Monetary Fund. Conversion of the sums into national currencies shall, in case of judicial proceedings, be made according to the value of such currencies in terms of the Special Drawing Right at the date of the judgment. The value of a national currency, in terms of the Special Drawing Right, of a High Contracting Party which is a Member of the International Monetary Fund, shall be calculated in accordance with the method of valuation applied by the International Monetary Fund, in effect at the date of the judgment, for its operations and transactions. The value of a national currency, in terms of the Special Drawing Right, of a High Contracting Party which is not a Member of the International Monetary Fund, shall be calculated in a manner determined by that High Contracting Party.

Nevertheless, those States which are not Members of the International Monetary Fund and whose law does not permit the application of the provisions of paragraph 2 b) of Article 22 may, at the time of ratification or accession or at any time thereafter, declare that the limit of liability of the carrier in judicial proceedings in their territories is fixed at a sum of two hundred and fifty monetary units per kilogramme. This monetary unit corresponds to sixty-five and a half milligrammes of gold of millesimal fineness nine hundred. This sum may be converted into the national currency concerned in round figures. The conversion of this sum into the national currency shall be made according to the law of the State concerned.

### Article 23

1. Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void, but the nullity of any such provision does not involve the nullity of the whole contract, which shall remain subject to the provisions of this Convention.

2. Paragraph 1 of this Article shall not apply to provisions governing loss or damage resulting from the inherent defect, quality or vice of the cargo carried.

### Article 24

1. In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

2. In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and limits of liability set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. Such limits of liability constitute maximum limits and may not be exceeded whatever the circumstances which gave rise to the liability.

### Article 25

In the carriage of passengers and baggage, the limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that he was acting within the scope of his employment.

### Article 25A

1. If an action is brought against a servant or agent of the carrier arising out of damage to which this Convention relates, such servant or agent, if he proves that he acted within the scope of his employment, shall be entitled to avail himself of the limits of liability which that carrier himself is entitled to invoke under Article 22.

2. The aggregate of the amounts recoverable from the carrier, his servants and agents, in that case, shall not exceed the said limits.

3. In the carriage of passengers and baggage, the provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the servant or agent done with intent to cause damage or recklessly and with knowledge that damage would probably result.

### Article 26

1. Receipt by the person entitled to the delivery of baggage or cargo without complaint is *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of carriage.

2. In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay the complaint must be made at the latest within

Section One

1.2

twenty-one days from the date on which the baggage or cargo have been placed at his disposal.

3. Every complaint must be made in writing upon the document of carriage or by separate notice in writing dispatched within the times aforesaid.

4. Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

### Article 27

In the case of the death of the person liable, an action for damages lies in accordance with the terms of this Convention against those legally representing his estate.

### Article 28[5]

1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court having jurisdiction where the carrier is ordinarily resident or has his principal place of business, or has an establishment by which the contract has been made, or before the court having jurisiction at the place of destination.

2. Questions of procedure shall be governed by the law of the court seised of the case.

### Article 29

1. The right to damages shall be extinguished if an action is not brought within 2 (two) years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

2. The method of calculating the period of limitation shall be determined by the law of the court seised of the case.

### Article 30

1. In the case of carriage to be performed by various successive carriers and falling within the definition set out in the third paragraph of Article 1, each carrier who accepts passengers, baggage or cargo is subject to the rules set out in this Convention, and is deemed to be one of the contracting parties to the contract of carriage insofar as the contract deals with that part of the carriage which is performed under his supervision.

2. In the case of transportation of this nature, the passenger or his representative can take action only against the carrier who performed the carriage during which the accident or the delay occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey.

3. As regards baggage or cargo, the passenger or consignor will have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery will have a right of action against the last carrier, and further, each may take action against the carrier who performed the carriage during which the destruction, loss, damage, or delay took place. These carriers will be jointly and severally liable to the passenger or to the consignor or consignee.

### Article 30A

Nothing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person.

## CHAPTER IV

## Provisions Relating to Combined Carriage

### Article 31

1. In the case of combined carriage performed partly by air and partly by any other mode of carriage, the provisions of this Convention shall apply only to the carriage by air, provided that the carriage by air falls within the terms of Article 1.

2. Nothing in this Convention shall prevent the parties in the case of combined carriage from inserting in the document of air carriage conditions relating to other modes of carriage, provided that the provisions of this Convention are observed as regards the carriage by air.

## CHAPTER V

## General and Final Provisions

### Article 32

Any clause contained in the contract and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this Convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void. Nevertheless for the carriage of cargo arbitration clauses are allowed, subject to this Convention, if the arbitration is to take place within one of the jurisdictions referred to in the first paragraph of Article 28.

### Article 33

Except as provided in paragraph 3 of Article 5, nothing in this Convention shall prevent the carrier either from refusing to enter into any contract of carriage or from making regulations which do not conflict with the provisions of this Convention.

[5] The United States' text of this Article is at Section 5.4. *[PN]*

### Article 34

The provisions of Articles 3 to 8 inclusive relating to documents of carriage shall not apply in the case of carriage performed in extraordinary circumstances outside the normal scope of an air carrier's business.

### Article 35

The expression "days" when used in this Convention means current days, not working days.

### Article 40A

1. In Article 37, paragraph 2 and Article 40, paragraph 1, the expression High Contracting Party shall mean State. In all other cases, the expression High Contracting Party shall mean a State whose ratification of or adherence to the Convention has become effective and whose denunciation thereof has not become effective.

2. For the purposes of the Convention the word territory means not only the metropolitan territory of a State but also all other territories for the foreign relations of which that State is responsible.

### Additional Protocol With Reference to Article 2

The High Contracting Parties reserve to themselves the right to declare at the time of ratification or of adherence that the first paragraph of Article 2 of this Convention shall not apply to international carriage by air performed directly by the State, its colonies, protectorates, or mandated territories, or by any other territory under its sovereignty, suzerainty, or authority.[6]

*(Articles 36-41 of the Warsaw Convention, Articles XVIII to XXVII of The Hague Protocol, and Articles XIV to XXV of Montreal Protocol No. 4 are tabulated in the pages that follow.)*

[6] As at 1 December 2003, nine (9) States had filed reservations to Article 2. See list at Sections 1.3 and 5.2. *[PN]*

# WARSAW CONVENTION, 1929, HAGUE PROTOCOL AND MONTREAL PROTOCOL NO. 4 COMPARISON TABLE

## WARSAW CONVENTION

### Article 36

This Convention is drawn up in French in a single copy which shall remain deposited in the archives of the Ministry for Foreign Affairs of Poland and of which one duly certified copy shall be sent by the Polish Government to the Government of each of the High Contracting Parties.

### Article 37

1. This Convention shall be ratified. The instruments of ratification shall be deposited in the archives of the Ministry for Foreign Affairs of Poland, which shall give notice of the deposit to the Government of each of the High Contracting Parties.

2. As soon as this Convention shall have been ratified by five of the High Contracting Parties it shall come into force as between them on the ninetieth day after the deposit of the fifth ratification. Thereafter it shall come into force between the High Contracting Parties which shall have ratified and the High Contracting Party which deposits its instrument of ratification on the ninetieth day after the deposit.

3. It shall be the duty of the Government of the Republic of Poland to notify the Government of each of the High Contracting Parties of the date on which this Convention comes into force as well as the date of the deposit of each ratification.

### Article 38

1. This Convention shall, after it has come into force, remain open for adherence by any State.

2. The adherence shall be effected by a notification addressed to the Government of the Republic of Poland, which shall inform the Government of each of the High Contracting Parties thereof.

## HAGUE PROTOCOL

### CHAPTER II

### Scope of Application of the Convention as Amended

### Article XVIII

The Convention as amended by this Protocol shall apply to international carriage as defined in Article 1 of the Convention, provided that the places of departure and destination referred to in that Article are situated either in the territories of two parties to this Protocol or within the territory of a single party to this Protocol with an agreed stopping place within the territory of another State.

### CHAPTER III

### Final Clauses

### Article XIX

As between the Parties to this Protocol, the Convention and the Protocol shall be read and interpreted together as one single instrument and shall be known as the *Warsaw Convention as amended at The Hague, 1955*.

### Article XX

Until the date on which this Protocol comes into force in accordance with the provisions of Article XXII, paragraph 1, it shall remain open for signature on behalf of any State which up to that date has ratified or adhered to the Convention or which has participated in the Conference at which this Protocol was adopted.

### Article XXI

1. This Protocol shall be subject to ratification by the signatory States.

2. Ratification of this Protocol by any State which is not a Party to the

## MONTREAL PROTOCOL NO. 4

### CHAPTER II

### Scope of Application of the Convention as Amended

### Article XIV

The Warsaw Convention as amended at The Hague in 1955 and by this Protocol shall apply to international carriage as defined in Article 1 of the Convention, provided that the places of departure and destination referred to in that Article are situated either in the territories of two Parties to this Protocol or within the territory of a single Party to this Protocol with an agreed stopping place in the territory of another State.

### CHAPTER III

### Final Clauses

### Article XV

As between the Parties to this Protocol, the Warsaw Convention as amended at The Hague in 1955 and this Protocol shall be read and interpreted together as one single instrument and shall be known as the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975.*

### Article XVI

Until the date on which this Protocol comes into force in accordance with the provisions of Article XVIII, it shall remain open for signature by any State.

### Article XVII

1. This Protocol shall be subject to ratification by the signatory States.

2. Ratification of this Protocol by any State which is not a Party to the Warsaw Convention or by any State

**WARSAW CONVENTION**

3. The adherence shall take effect as from the ninetieth day after the notification made to the Government of the Republic of Poland.

**Article 39**

1. Any one of the High Contracting Parties may denounce this Convention by a notification addressed to the Government of the Republic of Poland, which shall at once inform the Government of each of the High Contracting Parties.

2. Denunciation shall take effect six months after the notification of denunciation, and shall operate only as regards the party which shall have proceeded to denunciation.

**Article 40**

1. Any High Contracting Party may, at the time of signature or of deposit of ratification or of adherence, declare that the acceptance which it gives to this Convention does not apply to all or any of its colonies, protectorates, territories under mandate, or any other territory subject to its sovereignty or its authority, or any other territory under its suzerainty.

2. Accordingly any High Contracting Party may subsequently adhere separately in the name of all or any of its colonies, protectorates, territories under mandate, or any other territory subject to its sovereignty or to its authority or any other territory under its suzerainty which have been thus excluded by its original declaration.

3. Any High Contracting Party may denounce this Convention, in accordance with its provisions, separately or for all or any of its colonies, protectorates, territories under mandate, or any other territory subject to its sovereignty or to its authority, or any other territory under its suzerainty.

**HAGUE PROTOCOL**

Convention shall have the effect of adherence to the Convention as amended by this Protocol.

3. The instruments of ratification shall be deposited with the Government of the People's Republic of Poland.

**Article XXII**

1. As soon as thirty signatory States have deposited their instruments of ratification of this Protocol, it shall come into force between them on the ninetieth day after the deposit of the thirtieth instrument of ratification. It shall come into force for each State ratifying thereafter on the ninetieth day after the deposit of its instrument of ratification.

2. As soon as this Protocol comes into force it shall be registered with the United Nations by the Government of the People's Republic of Poland.

**Article XXIII**

1. This Protocol shall, after it has come into force, be open for adherence by any non-signatory State.

2. Adherence to this Protocol by any State which is not a Party to the Convention shall have the effect of adherence to the Convention as amended by this Protocol.

3. Adherence shall be effected by the deposit of an instrument of adherence with the Government of the People's Republic of Poland and shall take effect on the ninetieth day after the deposit.

**Article XXIV**

1. Any Party to this Protocol may denounce the Protocol by notification addressed to the Government of the People's Republic of Poland.

2. Denunciation shall take effect six months after the date of receipt by the Government of the People's Republic of Poland of the notification of denunciation.

**MONTREAL PROTOCOL NO. 4**

which is not a Party to the Warsaw Convention as amended at The Hague, 1955, shall have the effect of accession to the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975.*

3. The instruments of ratification shall be deposited with the Government of the Polish People's Republic.

**Article XVIII**

1. As soon as thirty signatory States have deposited their instruments of ratification of this Protocol, it shall come into force between them on the ninetieth day after the deposit of the thirtieth instrument of ratification. It shall come into force for each State ratifying thereafter on the ninetieth day after the deposit of its instrument of ratification.

2. As soon as this Protocol comes into force it shall be registered with the United Nations by the Government of the Polish People's Republic.

**Article XIX**

1. This Protocol, after it has come into force, shall be open for accession by any non-signatory State.

2. Accession to this Protocol by any State which is not a Party to the Warsaw Convention or by any State which is not a Party to the Warsaw Convention as amended at The Hague, 1955, shall have the effect of accession to the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975.*

3. Accession shall be effected by the deposit of an instrument of accession with the Government of the Polish People's Republic and shall take effect on the ninetieth day after the deposit.

**Article XX**

1. Any Party to this Protocol may denounce the Protocol by notification

**WARSAW CONVENTION**

### Article 41

Any High Contracting Party shall be entitled not earlier than two years after the coming into force of this Convention to call for the assembling of a new international conference in order to consider any improvements which may be made in this Convention. To this end it will communicate with the Government of the French Republic which will take the necessary measures to make preparations for such conference.

This Convention, done at Warsaw on October 12, 1929, shall remain open for signature until January 31, 1930.

**HAGUE PROTOCOL**

3. As between the Parties to this Protocol, denunciation by any of them of the Convention in accordance with Article 39 thereof shall not be construed in any way as a denunciation of the Convention as amended by this Protocol.

### Article XXV

1. This Protocol shall apply to all territories for the foreign relations of which a State Party to this Protocol is responsible, with the exception of territories in respect of which a declaration has been made in accordance with paragraph 2 of this Article.

2. Any State may, at the time of deposit of its instrument of ratification or adherence, declare that its acceptance of this Protocol does not apply to any one or more of the territories for the foreign relations of which such State is responsible.

3. Any State may subsequently, by notification to the Government of the People's Republic of Poland, extend the application of this Protocol to any or all of the territories regarding which it has made a declaration in accordance with paragraph 2 of this Article. The notification shall take effect on the ninetieth day after its receipt by that Government.

4. Any State Party to this Protocol may denounce it, in accordance with the provisions of Article XXIV, paragraph 1, separately for any or all of the territories for the foreign relations of which such State is responsible.

### Article XXVI

No reservation may be made to this Protocol except that a State may at any time declare by a notification addressed to the Government of the People's Republic of Poland that the Convention as amended by this Protocol shall not apply to the carriage of persons, cargo and baggage for its military authorities on aircraft, registered in that State, the whole capacity of which has been reserved by or on behalf of such authorities.

**MONTREAL PROTOCOL NO. 4**

addressed to the Government of the Polish People's Republic.

2. Denunciation shall take effect six months after the date of receipt by the Government of the Polish People's Republic of the notification of denunciation.

3. As between the Parties to this Protocol, denunciation by any of them of the Warsaw Convention in accordance with Article 39 thereof or of The Hague Protocol in accordance with Article XXIV thereof shall not be construed in any way as a denunciation of the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975.*

### Article XXI

1. Only the following reservations may be made to this Protocol:
   a) a State may at any time declare by a notification addressed to the Government of the Polish People's Republic that the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975*, shall not apply to the carriage of persons, baggage and cargo for its military authorities on aircraft, registered in that State, the whole capacity of which has been reserved by or on behalf of such authorities; and
   b) any State may declare at the time of ratification of or accession to the Additional Protocol No. 3 of Montreal, 1975, or at any time thereafter, that it is not bound by the provisions of the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975*, in so far as they relate to the carriage of passengers and baggage. Such declaration shall have effect ninety days after the date of receipt of the declaration by the Government of the Polish People's Republic.

**WARSAW CONVENTION** | **HAGUE PROTOCOL** | **MONTREAL PROTOCOL NO. 4**

### Article XXVII

The Government of the People's Republic of Poland shall give immediate notice to the Governments of all States signatories to the Convention or this Protocol, all States Parties to the Convention or this Protocol, and all States Members of the International Civil Aviation Organization or of the United Nations and to the International Civil Aviation Organization:

a) of any signature of this Protocol and the date thereof;

b) of the deposit of any instrument of ratification or adherence in respect of this Protocol and the date thereof;

c) of the date on which this Protocol comes into force in accordance with Article XXII, paragraph 1;

d) of the receipt of any notification of denunciation and the date thereof;

e) of the receipt of any declaration or notification made under Article XXV and the date thereof; and

f) of the receipt of any notification made under Article XXVI and the date thereof.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, having been duly authorized, have signed this Protocol.

DONE at The Hague on the twenty-eighth day of the month of September of the year One Thousand Nine Hundred and Fifty-five, in three authentic texts in the English, French and Spanish languages. In the case of any inconsistency, the text in the French language, in which language the Convention was drawn up, shall prevail.

This Protocol shall be deposited with the Government of the People's Republic of Poland with which, in accordance with Article XX, it shall remain open for signature, and that

2. Any State having made a reservation in accordance with the preceding paragraph may at any time withdraw such reservation by notification to the Government of the Polish People's Republic.

### Article XXII

The Government of the Polish People's Republic shall promptly inform all States Parties to the Warsaw Convention or to that Convention as amended, all signatory or acceding States to the present Protocol, as well as the International Civil Aviation Organization, of the date of each signature, the date of deposit of each instrument of ratification or accession, the date of coming into force of this Protocol, and other relevant information.

### Article XXIII

As between the Parties to this Protocol which are also Parties to the Convention, Supplementary to the Warsaw Convention, for the Unification of Certain Rules Relating to International Carriage by Air Performed by a Person Other than the Contracting Carrier, signed at Guadalajara on 18 September 1961 (hereinafter referred to as the "Guadalajara Convention") any reference to the "Warsaw Convention" contained in the Guadalajara Convention shall include reference to the *Warsaw Convention as amended at The Hague, 1955, and by Protocol No. 4 of Montreal, 1975*, in cases where the carriage under the agreement referred to in Article 1, paragraph b) of the Guadalajara Convention is governed by this Protocol.

### Article XXIV

If two or more States are Parties both to this Protocol and to the Guatemala City Protocol, 1971, or to the Additional Protocol No. 3 of

**WARSAW CONVENTION**

**HAGUE PROTOCOL**

Government shall send certified copies thereof to the Governments of all States signatories to the Convention or this Protocol, all States Parties to the Convention or this Protocol, and all States Members of the International Civil Aviation Organization or of the United Nations, and to the International Civil Aviation Organization.

**MONTREAL PROTOCOL NO. 4**

Montreal, 1975, the following rules shall apply between them:

a) the provisions resulting from the system established by this Protocol, concerning cargo and postal items, shall prevail over the provisions resulting from the system established by the Guatemala City Protocol, 1971, or by the Additional Protocol No. 3 of Montreal, 1975;

b) the provisions resulting from the system established by the Guatemala City Protocol, 1971, or by the Additional Protocol No. 3 of Montreal, 1975, concerning passengers and baggage, shall prevail over the provisions resulting from the system established by this Protocol.

**Article XXV**

This Protocol shall remain open for signature until 1 January 1976 at the Headquarters of the International Civil Aviation Organization and thereafter until it comes into force in accordance with Article XVIII at the Ministry for Foreign Affairs of the Polish People's Republic. The International Civil Aviation Organization shall promptly inform the Government of the Polish People's Republic of any signature and the date thereof during the time that the Protocol shall be open for signature at the Headquarters of the International Civil Aviation Organization.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, having been duly authorized, have signed this Protocol.

DONE AT MONTREAL on the twenty-fifth day of September of the year One Thousand Nine Hundred and Seventy-five in four authentic texts in the English, French, Russian and Spanish languages. In the case of any inconsistency, the text in the French language, in which language the Warsaw Convention of 12 October 1929 was drawn up, shall prevail.