Ajibola v. Sabena Belgium Airline
S.D.N.Y.,1995.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Joseph Malomo AJIBOLA, Plaintiff
v.
SABENA BELGIUM AIRLINE, Defendant.
**No. 95 Civ. 2479 (CSH).**

Sept. 15, 1995.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, District Judge:

***1** Defendant removed the above-captioned action from Bronx County Civil Court on April 11, 1995. Plaintiff subsequently requested an extension of time within which to move to remand the case back to state court. By Memorandum Opinion and Order dated July 3, 1995, the Court held that plaintiff was not entitled to an extension of the statutorily proscribed time within which he could move to remand on the basis of a defect in the removal procedure. The Court noted, however, that plaintiff could move to remand the action at any time on the basis of lack of subject matter jurisdiction. Plaintiff thereafter filed the within motion to remand the action on the basis of this Court's lack of subject matter jurisdiction. For the reasons set forth below, I deny plaintiff's application.

Plaintiff's case stems from the shipment of goods on Sabena Belgium Airline ("Sabena") from Lagos, Nigeria to the United States in June of 1994. The following facts described by the defendant in its opposition brief are not disputed by plaintiff. For purposes of this motion only, the Court accepts these facts as true.

Pursuant to the terms of an air waybill issued on June 9, 1994, two cartons of goods were consigned to be shipped on Sabena from Lagos, Nigeria to plaintiff in Houston, Texas where they would be received by plaintiff. Sabena shipped the goods from Lagos to New York's Kennedy Airport. At Kennedy, Sabena was scheduled to transfer the goods to Delta Airlines which would in turn ship them to Houston, Texas. When Delta refused to accept the merchandise because it was poorly packaged, Sabena obtained plaintiff's permission to repackage the goods. Plaintiff subsequently directed Sabena to have the goods shipped to Boston instead of Houston. Sabena complied with plaintiff's request and arranged for the goods to be transported to Boston. Once the goods arrived in Boston, Sabena contacted plaintiff who failed to retrieve the goods. The merchandise was subsequently seized by the United States Customs Service.

On August 26, 1994, plaintiff filed the within action in Bronx County Civil Court. Defendant thereafter removed this action on the basis of federal question jurisdiction as a case arising under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, done at Warsaw, Oct. 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reprinted in note following 49 U.S.C. § 1502 (1976) (the "Warsaw Convention"). Plaintiff contends that his action arises solely under the tort laws of the state of New York. However, if plaintiff's claim is governed by the Warsaw Convention as the defendant maintains, this Court has subject matter jurisdiction over the case.

The Warsaw Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire."Article 1(1). There is no question that the transportation of the goods at issue in this case was "international" within the meaning of the Warsaw Convention, given that the countries of origin (Nigeria) and destination (United States) are both signatories to that treaty. *See* Article 1(2).

***2** Defendant contends that plaintiff's claim is governed by Article 19 of the Warsaw Convention which provides:

"The carrier shall be liable for damage occa-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sioned by delay in the transportation by air of passengers, baggage, or goods."

Plaintiff's succinct statement of his claim in Bronx County Civil Court confirms that his claim falls directly under this provision. Plaintiff states that Sabena is liable for its "[f]ailure to deliver merchandise on time and falsely collecting repackaging money from me."*See* Plaintiff's Notice of Motion, Exhibit A. There is no question that the merchandise shipped by Sabena constitute "goods" for purposes of the Warsaw Convention, and plaintiff is admittedly aggrieved by Sabena's failure to *timely* deliver the goods. Accordingly, it is evident that plaintiff seeks compensation for damages occasioned by the delay in the transportation of the consigned goods. As such, plaintiff's claim is governed by Article 19 of the Warsaw Convention, which, as a treaty of the United States, provides this Court with subject matter jurisdiction.

Because the Court has subject matter jurisdiction over plaintiff's claim, the action was properly removed from state court. Plaintiff's motion to remand the case is accordingly denied. Plaintiff is directed to contact the Pro Se Office of this Court in order to ascertain the proper procedure for applying to the Court for appointment of counsel.

It is SO ORDERED.

S.D.N.Y.,1995.
Ajibola v. Sabena Belgium Airline
Not Reported in F.Supp., 1995 WL 552737 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C
Bloom v. Alaska Airlines
C.A.9,2002.
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)
United States Court of Appeals,Ninth Circuit.
Paul BLOOM, Plaintiff-Appellee,
v.
ALASKA AIRLINES, Defendant-Appellant.
Paul BLOOM, Plaintiff-Appellant,
v.
Alaska Airlines, Defendant-Appellee.
**No. 01-55684, 01-55779.**
**D.C. No. CV-01-00325-RSWL.**

Argued and Submitted April 4, 2002.
Decided May 30, 2002.

Airline passenger brought nine causes of action against airline in state court, arising out of his confrontation with flight attendant while he boarded plane bound for Mexico. Airline removed action to federal court on the ground that passenger's claims were preempted by the Warsaw Convention. The United States District Court for the Central District of California Ronald S.W. Lew, J., held that passenger's claims for emotional distress were preempted, but remanded the remaining claims to state court. Parties appealed the portions of the district court's decision adverse to each of them. The Court of Appeals held that: (1) Warsaw Convention preempted and denied recovery for airline passenger's state law claim for intentional infliction of emotional distress, and (2) passenger's fraud and contract claims, which alleged only economic harm and which were indistinct from his claims for emotional distress, were preempted by the Warsaw Convention.

Affirmed in part, reversed in part, and remanded with instructions.

West Headnotes

**[1] Damages 115 ⚷57.5**

115 Damages
115III Grounds and Subjects of Compensatory Damages
115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
115III(A)2 Mental Suffering and Emotional Distress
115k57.4 Preemption
115k57.5 k. In General. Most Cited Cases
(Formerly 115k50.10)

**Treaties 385 ⚷8**

385 Treaties
385k8 k. Construction and Operation of Particular Provisions. Most Cited Cases

**Treaties 385 ⚷11**

385 Treaties
385k11 k. Operation as to Laws Inconsistent with or Repugnant to Treaty Provisions. Most Cited Cases
Warsaw Convention, which governs actions arising from international air travel and provides the exclusive remedy for conduct which falls within its provisions, preempted and denied recovery for airline passenger's state law claim for intentional infliction of emotional distress; Warsaw Convention created no exception for an injury suffered as a result of intentional conduct. Warsaw Convention, Art. 17, 49 U.S.C.A. § 40105 note.

**[2] Carriers 70 ⚷273.1**

70 Carriers
70IV Carriage of Passengers
70IV(C) Performance of Contract of Transportation
70k273 Actions Arising Out of Breach of Contract
70k273.1 k. In General. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Fraud 184 ⚷31**

184 Fraud
184II Actions
184II(A) Rights of Action and Defenses
184k31 k. Nature and Form of Remedy. Most Cited Cases

**Treaties 385 ⚷11**

385 Treaties
385k11 k. Operation as to Laws Inconsistent with or Repugnant to Treaty Provisions. Most Cited Cases

Airline passenger's fraud and contract claims, which alleged only economic harm but which were indistinct from his claims for emotional distress, were preempted by the Warsaw Convention, which governs actions arising from international air travel and provides the exclusive remedy for conduct falling within its provisions, where all of passenger's claims arose from the same confrontation with flight attendant during embarkment, and passenger also admitted he suffered no bodily injuries. Warsaw Convention, Art. 17, 49 U.S.C.A. § 40105 note.

***279** Appeal from the United States District Court for the Central District of California Ronald S.W. Lew, District Judge, Presiding.

Before PREGERSON, LEAVY and TROTT, Circuit Judges.

MEMORANDUM FN*

FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

****1** Paul Bloom ("Bloom") brought nine causes of action against Alaska Airlines ("AA") in California Superior Court arising out of his confrontation with an AA flight attendant while he boarded a plane in Los Angeles bound for Mexico. AA removed the action to federal court on the ground that Bloom's claims were completely preempted by the Warsaw Convention ("Warsaw Convention" or "Convention").FN1 AA then moved for summary judgment on all the claims.

FN1. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C. § 40105. In this memorandum, citations to the Convention are to its official English translation. *See* 49 Stat. 3014-3023.

The district court held that Bloom's claims for emotional distress were completely preempted and granted summary judgment on them. The district court rejected AA's argument that the Convention preempted the remaining claims and, electing not to exercise jurisdiction over these claims, remanded them to state court.

The parties appeal the portions of the district court's decision adverse to each of them. We have jurisdiction pursuant to 28 U.S.C. § 1291 and hold that the Warsaw Convention completely preempts and denies recovery for each of Bloom's claims. We therefore affirm in part, reverse in part, and remand.

STANDARD OF REVIEW

We review grants of summary judgment de novo. *Carey v. United States*, 255 F.3d 1044, 1047 (9th Cir.2001). We review the district court's decisions concerning preemption de novo. *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1203 (9th Cir.2002).

DISCUSSION

I The Warsaw Convention

The Warsaw Convention governs actions arising from international air travel, and provides the exclusive remedy for conduct which falls within

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its provisions. *El Al Isr. Airlines, Ltd. v. Tseng,* 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Article 17 of the Convention addresses claims for personal injury and provides that a carrier

> shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by the passenger, if the accident which caused the damage so sustained took place on board the aircraft ***280** or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018. An air carrier's liability under Article 17 arises only if (1) an accident (2) caused the passenger to suffer bodily harm, and (3) the accident took place on board the aircraft or during embarking or disembarking. *E. Airlines, Inc. v. Floyd,* 499 U.S. 530, 535-36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). "Article 17 does not allow recovery for purely mental injuries." *Id.* at 534, 111 S.Ct. 1489.

Article 24 evidences the Convention's exclusive role in remedying certain harms in air travel. Article 24, as amended by Montreal Protocol No. 4, reads in relevant part: "In the carriage of passengers and baggage, any action for damages, *however founded,* can only be brought subject to the conditions and limits set out in this Convention." S. Exec. Rep. No. 105-20, at 29 (emphasis added). Under this provision, "the Convention's preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Tseng,* 525 U.S. at 174-75, 119 S.Ct. 662.

II Bloom's Claim For Intentional Infliction of Emotional Distress

****2** [1] Bloom concedes that he suffered no bodily injury during embarkment and that mental harm is not cognizable under the Convention. Bloom contends, however, that his claim for intentional infliction of emotional distress is not preempted because the Convention does not govern the commission of intentional and malicious torts that cause non-bodily harm.

We rejected an identical claim in *Carey,* where plaintiff brought an action for intentional infliction of emotional distress against United Airlines for damages arising out of his argument with a flight attendant. 255 F.3d at 1045. Carey alleged that because his claim arose out of intentional conduct, it fell outside the scope of the Convention. *Id.* at 1046. We rejected Carey's position, noting that the Warsaw Convention creates "no exception for an injury suffered as a result of intentional conduct." *Id.* at 1051. Accordingly, we held that the Warsaw Convention preempted and denied recovery for Carey's state law claims. *Id. Carey* compels the same result for Bloom's emotional distress claim.

III Bloom's Fraud, Breach of Contract, and Negligent Supervision Claims

[2] Bloom's fraud and contract claims allege only *economic* harm, an injury seemingly outside the province of Article 17. Thus, Bloom believes that these actions were properly remanded because "the Convention's preemptive effect on local law extends no further than the Convention's own substantive scope." *Tseng,* 525 U.S. at 172, 119 S.Ct. 662. Bloom's position, however, fails to acknowledge our obligation to construe the Convention's reach with an eye towards its "cardinal purpose:" "to 'achieve uniformity of rules governing claims arising from international air transportation.' " *Id.,* at 169, 119 S.Ct. 662 (quoting *Floyd,* 499 U.S. at 552, 111 S.Ct. 1489). Courts are discouraged from adopting constructions of the Convention that would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty." *Tseng,* 525 U.S. at 171, 119 S.Ct. 662; *Dazo v. Globe Airport Sec. Servs.,* 268 F.3d 671, 679 (9th Cir.2001) (recognizing "the need to avoid interpretations of the Convention which would permit plaintiffs to avoid its strictures").

Bloom's pleadings and statements at oral argument make abundantly clear that ***281** his contract

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and fraud actions are indistinct from his claims for emotional distress because all arose from the same discrete event during embarkment. Therefore, these causes of action are preempted by the Warsaw Convention. Moreover, because Bloom admits he suffered no bodily injuries, the fraud and contract actions are not cognizable under the Convention and must be dismissed. Bloom's claims for unlawful business acts and unjust enrichment derive from the contract and fraud claims and, thus, are similarly unavailing.

As for Bloom's negligent supervision claim, we need note only that it is based on the mental trauma he allegedly suffered during his embarkment confrontation. Consequently, this claim is foreclosed by *Floyd, Tseng* and *Carey.*

****3** AFFIRMED in part, REVERSED in part, and REMANDED with instructions to dismiss the action. Costs awarded to Alaska Airlines.

C.A.9,2002.
Bloom v. Alaska Airlines
36 Fed.Appx. 278, 2002 WL 1136727 (C.A.9)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C
Booker v. BWIA West Indies Ariways Ltd.
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,E.D. New York.
Sheila BOOKER, Plaintiff,
v.
BWIA WEST INDIES AIRWAYS LIMITED, Defendant.
**No. 06-CV-2146 (RER).**

May 8, 2007.

Vivian M. Williams, Vivian Williams, Esq., Vivian M. Williams & Associates, New York, NY, for Plaintiff.
Stephen J. Fearon, Condon & Forsyth LLP, New York, NY, John Maggio, Condon & Forsyth LLP, New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

RAMON E. REYES, JR., U.S.M.J.

***1** Before this Court is BWIA West Indies Airways Limited's ("defendant" or "BWIA") motion for partial summary judgment. FN1 Plaintiff Sheila Booker ("plaintiff" or Booker") brought this action seeking damages for stolen and damaged baggage, intentional and negligent infliction of emotional distress, deceptive business practices and conversion/negligence. Defendant contends that plaintiff's state law claims are preempted by the Montreal Convention of 1999 FN2 (the "Montreal Convention"), that she cannot recover for emotional injuries under the Montreal Convention, and that its liability, if any, for plaintiff's stolen and damaged baggage is limited under the Montreal Convention. For the reasons set forth below, defendant's motion for partial summary judgment is granted in part. 2

FN1. The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

FN2. Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28 May 1999, ICAO Doc. No. 9740 (entered into force on November 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 ("Montreal Convention of 1999").

*Facts*

At the outset, the Court notes that plaintiff has failed to submit a counter statement of disputed facts in accordance with Local Rule 56.1. Therefore, the following facts, taken from defendant's Local Rule 56.1 statement, are deemed admitted.

In November 2004, plaintiff purchased roundtrip tickets for BWIA Flight 425 from John F. Kennedy Airport to Georgetown, Guyana on December 17, 2004. Statement of Facts Pursuant to Local Rule 56.1 ("Def's 56.1 Stmt") ¶ 3. On December 17, 2004, plaintiff boarded Flight 425 with her three-year old daughter. Plaintiff and her daughter were the last two passengers to board the plane. *Id.* ¶ 4, 5.

As the plane was preparing to depart, plaintiff was required to surrender her two pieces of carry-on baggage against her will. *Id* . ¶ 6. Plaintiff was given two baggage claim checks for her baggage. *Id.* ¶ 7.

At no time did plaintiff remove any items from her baggage nor did she disembark the plane. Def's 56.1 Stmt ¶ 8. When plaintiff arrived in Guyana her two pieces of baggage were missing. *Id.* ¶ 9. Plaintiff filed a Baggage Claim Report and listed the contents as cash, jewelry and Christmas cards. *Id.* ¶ 10, 11.At her deposition, plaintiff testified that the baggage also contained medication. *Id.* ¶ 15.Approximately four days after her arrival, plaintiff's baggage arrived in Guyana. *Id.* ¶ 14.

When she received her baggage she discovered that items were missing: $5,000 in cash, jewelry worth $6,400, and $390 in Christmas cards, for a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

total of $11,790. *Id.* ¶ 16.During her deposition, plaintiff testified that she suffered "great emotional stress" as a result of the baggage being delayed.*Id.* ¶ 17, 19.

On April 17, 2006, plaintiff filed the complaint in Supreme Court of New York, Kings County alleging intentional infliction of emotional distress, negligent infliction of emotional distress, deceptive business practice, conversion/negligence and seeking damages for her stolen and damaged baggage.*Id.,* Ex. A. On May 9, 2006, defendant removed the action to this Court. Docket Entry 1. Defendant filed the instant motion for partial summary judgment on March 21, 2007. Docket Entry 32.

*Discussion*

A. *Summary Judgment Standard*

***2** A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In addition, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Anderson v., Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). If, however, the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof, summary judgment will be granted. *Celotex,* 477 U.S. at 323;*Smith v. Half Hollow Hill Cent. Sch. Dist.,* 349 F.Supp.2d 521, 524 (E.D.N.Y.2004).

To overcome a motion for summary judgment, the opposing party must show that there is an issue of material fact in dispute. That is, the disputed fact must be one which "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 242. If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. FED. R. CIV. P. 56(c).

Defendant argues that plaintiff's state law claims are preempted by the Montreal Convention because it is the exclusive source of plaintiff's remedy. Defendant further argues that the only viable claim under the Montreal Convention is plaintiff's claim for stolen and damaged baggage, which is subject to a liability limitation of 1000 Special Drawing Rights. Plaintiff, on the other hand, contends that the Montreal Convention does not preempt her state law claims because it does not apply to acts of wilful misconduct. Plaintiff further contends that the liability limitation does not apply because: (1) plaintiff was not allowed to declare a higher value for her baggage; (2) defendant's acts amounted to wilful misconduct; and (3) the loss occurred outside the scope of the Montreal Convention.

B. *Plaintiff's Claims Are Governed Exclusively by The Montreal Convention*

The Montreal Convention, entered into force on November 4, 2003, and applies to "all international carriage of persons, baggage or cargo performed by aircraft for reward...." International carriage is defined as any carriage where the place of departure and the place of destination are either (1) situated within the territories of two State Parties, or (2) within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Art. 1(2). The Montreal Convention is "applicable to all actions for damages arising in the carriage of passengers, baggage, and cargo, however such claims may be founded."Article 29.

The Montreal Convention succeeded the Warsaw Convention [FN3] as the treaty governing air carrier liability. *Paradis v. Ghana Airways Ltd.,* 348 F.Supp.2d 106, 110 n. 4-5 (S.D.N.Y.2006). The Montreal Convention is "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention."*Ehrlich v. Am.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Airlines, Inc., 360 F.3d 366, 371 n. 4 (2d Cir.2004). Like the Warsaw Convention, however, the Montreal Convention has been construed as having a complete preemptive effect over all claims within its scope. El Al Israel v. Tseng, 525 U.S. 155, 161, 175 (1999) (Warsaw Convention); King v. American Airlines, 284 F.3d 352, 356-57 (2d Cir.2002) (same); Shah v. Pan Am. World Servs., Inc., 148 F.3d 84, 97-98 (2d Cir.1998) (same); Paradis, 348 F.Supp.2d at 111 (noting preemptive effect of Montreal Convention is "substantially the same" as that of Warsaw Convention). The preemptive effect of the Montreal Convention can be found in Article 29 which states

> FN3. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in note following*49 U.S.C. § 40105 (1997) ("Warsaw Convention").

***3** In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention ...

Plaintiff argues that defendant engaged in wilful misconduct and that therefore, the Montreal Convention does not apply. Plaintiff has cited to no case law, nor is the Court aware of any, which holds that wilful misconduct creates an exception to the applicability of the Montreal Convention. In support of this argument plaintiff relies on a dissenting opinion FN4 in *El Al* and an inapposite case, Koirala v. Thai Airways Int'l, Ltd., 126 F.3d 1205 (9 th Cir.1997). Contrary to plaintiff's assertion, the Court in *Koirala* held that a finding of wilful misconduct lifted the Warsaw Convention's cap on damages, *not* that it created an exception to the Convention's applicability. *Id.* at 1209.In fact, case law reflects just the opposite of plaintiff's contention. *See* El Al Israel, 525 U.S. at 163 n. 7 (noting that liability may be lifted for acts of wilful misconduct); Dazo v. Globe Airport Security Services, 295 F.3d 934, 940 (9th Cir.2002) ("If a plaintiff establishes willful misconduct by the carrier, Article 25 [of the Warsaw Convention] lifts the limits on liability, but the Convention remains the exclusive source for plaintiff's remedy."); Schopenhauer v. Compagnie Nationale Air France, 255 F.Supp.2d 81, 89 (E.D.N.Y.2003); In re Air Crash at Belle Harbor, NY, on Nov. 12, 2001, Nos. 02 MDL 1448, 02 Civ. 6746, 02 Civ. 6747, 2003 WL 21032034, *4 (S.D.N.Y. May 5, 2003).

> FN4. Plaintiff cites to Justice Stevens' dissent in *El Al,* in which Justice Stevens argues that the Warsaw Convention was not intended to shield carriers from liability for acts involving wilful misconduct. A dissent, however, is not binding and has absolutely no precedential value.

Moreover, the language of the Montreal Convention itself makes it clear that intentional acts by a defendant merely lifts the limitation of liability rather than remove claims from the Montreal Convention's scope. Article 22(1) limits a carrier's liability to 4150 Special Drawing Rights per passenger in case of delay of passengers, and Article 22(2) limits it to 1000 Special Drawing Rights per passenger in case of destruction, loss, damage or delay to baggage. However, Article 22(5) provides

the *foregoing provisions of paragraphs 1 and 2 of this Article shall not apply* if it is proved that the damage resulted from an act or omission of the carrier, its servants and agents, done with intent to cause damage or recklessly and with knowledge that damage will probably result; provided that ... it is also proved that such servant or agent was acting within the scope of its employment.

Plaintiff's claims are clearly within the scope of the Montreal Convention. Plaintiff's place of departure and place of destination were within the territory of a single State Party, the U.S., and there were agreed stopping places in Port of Spain and Georgetown, Guyana. Thus, plaintiff's flight constitutes international carriage within the meaning of the Montreal Convention. Plaintiff seeks damages for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

injuries caused by events which are covered by the Montreal Convention, specifically the seizure of her baggage on board the aircraft, and the damage to and delay of her baggage. Because plaintiff's claims are within the scope of the Montreal Convention her claims are exclusively governed by the Montreal Convention and thus, her state law claims are preempted.

C. *Plaintiff May Not Recover For Emotional Injuries Under The Montreal Convention*

***4** The Montreal Convention defines three situations in which a carrier is liable: (1) death or bodily injury of passengers; (2) damage to baggage; and (3) delay of passengers, baggage and cargo. Plaintiff alleges that she suffered emotional distress as a result of the seizure of her baggage, the delay in receiving her baggage and the discovery of the loss of the contents of her baggage. Plaintiff asserts causes of action for intentional and negligent infliction of emotional distress. Pursuant to Article 17(1), a carrier is liable in case of death or bodily injury of a passenger caused by an accident FN5 either on board the aircraft, or in the course of any of the operations of embarking or disembarking. Emotional injuries, however, are not recoverable under the Montreal Convention unless they were caused by physical injuries. *See* Erlich, 360 F.3d at 369-400 (a carrier is liable for mental injuries only to the extent that they were caused by bodily injuries); *Eastern Airlines Inc. v. Floyd*, 499 U.S. 530, 552 (1991) (carriers are not liable for purely mental injuries); *see also* *El Al Israel*, 525 U.S. at 161 (recovery for personal injury claims "if not allowed under the [Warsaw] Convention, is not available at all.").

FN5. Plaintiff contends that because Article 17 provides for recovery for injuries caused by accidents, the Montreal Convention does not preempt state law claims based on wilful misconduct. Plaintiff Memorandum in Opposition ("Pl.Memo") at 8. As an initial matter, the Court notes that Article 17 states "[T]his provision will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments."The "definition of an 'accident,' ... is not part of the analysis used to determine if the injuries fall within the Warsaw Convention's scope (i.e., because they occurred on board or during the operations of embarkation or disembarkation), but is rather part of the inquiry to determine if the injuries satisfy the Warsaw Convention's liability requirements (i.e., that the injury was caused by an accident and was bodily or had a bodily manifestation)."*Singh v. North Am. Airlines*, 426 F.Supp.2d 38, 41 n. 1 (E.D.N.Y.2006). Moreover, the Supreme Court addressed this issue in *El Al* when it rejected plaintiff's argument that air carriers will escape liability for their intentional torts if not permitted to bring personal injury claims outside of the terms of the Warsaw Convention. *El Al Israel*, 525 U.S. at 172. The *El Al* Court reiterated that the definition of accident is an "unusual event ... external to the passenger" and that "[t]his definition should be flexibly applied."*Id.* (quoting *Air France v. Saks*, 470 U.S. 392, 405 (1985). Defendants argue that no accident occurred because requiring a passenger to check her carry on baggage is not an unusual event. However, plaintiff alleges that defendant seized her baggage with the knowledge that it contained medical supplies but refused to allow her to remove them from her baggage. Forcing a passenger to relinquish medical supplies is not part of the "usual, normal, and expected operation of the aircraft."*Olympic Airways v. Husain*, 540 U.S. 644, 651 (2004) (quoting *Saks*, 470 U.S. at 405-06). Thus, there is a genuine is of fact regarding whether an accident occurred. Nonetheless, this issue of fact is not enough to survive summary judgment because plaintiff has failed to establish a bodily injury.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff alleges that upon receiving her baggage and discovering her missing items she suffered an asthma attack and that as a result she experienced swelling of her hands and feet. Complaint ¶ 13; Plaintiff Affidavit ¶ 10, 15. The cause of plaintiff's asthma attack and subsequent swelling, however, was the alleged theft of the contents of her baggage, not the seizure of her baggage. Thus, even were plaintiff's complaint to be read as stating a cause of action for bodily injury, the injury was not caused by an accident on board the aircraft or in the course of embarking or disembarking. Plaintiff has therefore failed to establish liability under Article 17(1) of the Montreal Convention. FN6

FN6. Plaintiff also cannot recover for emotional injuries caused by the delay of baggage. *See* Def.'s 56.1 Stmt ¶ 19 (plaintiff testified that she suffered "great emotional stress" as a result of the delay of her baggage). Pursuant to Article 19, a carrier is liable for damages caused by delay in the carriage of passengers, baggage, and cargo unless the carrier can prove it took all reasonable measures to avoid the damage or that it was impossible for it to take such measures. Montreal Convention, Art. 19. Although case law analyzing damages caused by delay deal primarily with "bumping" of passengers from flights, the same logic can be extended to cases involving the delay of baggage. In *Daniel v. Virgin Atlantic Airways Ltd.*, 59 F.Supp.2d 986 (N.D.Cal.1998), the Court concluded that it could "not logically find that damages for purely emotional injuries caused by delayed arrival are available under the Convention, when damages for purely emotional injuries caused by a near-crash into the ocean are not available."This reasoning was endorsed in the Eastern District of New York in *Fields v. BWIA Int'l Airways*, 2000 WL 1091129, at *6 (JG) (E.D.N .Y. July 7, 2006). Thus, it is unlikely that recovery for emotional injuries caused by delay in baggage would be permitted when recovery for emotional injuries caused by delay in transportation would not.

D. *Defendant's Liability Is Limited for Plaintiff's Stolen And Damaged Baggage*

Plaintiff's claim for stolen and damaged baggage is also governed exclusively by the Montreal Convention. Pursuant to Article 17(2), a carrier is liable for damage sustained in the case of "destruction or loss of, or damage to checked baggage" if the loss or damage occurred on board the aircraft or "during any period within which the checked baggage was in the charge of the carrier."As the damage to plaintiff's checked baggage occurred while her baggage was in the charge of defendant, plaintiff's claim is within the scope of the Montreal Convention.

Defendant does not contest that it may be held liable for the damage to plaintiff's baggage. Rather, defendant argues that its liability, if any, is limited by Article 22(2). Pursuant to Article 22(2), a carrier is only liable for 1,000 Special Drawing Rights, unless the passenger made a special declaration of interest at the time the baggage was handed over to the carrier. Article 22(5) provides that this provision does not apply if the "damage resulted from an act or omission of a servant or agent ... done with intent to cause damage or recklessly and with knowledge that damage will probably result ... provided that such servant or agent was acting within the scope of its employment."

***5** The Court is not aware of any case law analyzing Article 22(5) of the Montreal Convention; however, courts have previously relied on cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same. *See Paradis*, 348 F.Supp.2d at 111;*see also Kalantar v. Lufthansa German Airlines*, 402 F.Supp.2d. 130, 140 n. 10 (D.D.C.2005). Here, plaintiff alleges that the contents of her baggage were stolen. New York courts interpreting the Warsaw Convention have held that theft by an employee is outside the scope

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of employment and thus, do not remove the limitation on a carrier's liability.FN7 *See Brink's Ltd. v. South African Airways,* 94 Civ.1902, 1995 WL 225602, at * (S.D.N.Y. Apr. 17, 1995) (collecting cases), *rev'd on other grounds,* 93 F.3d 1022 (1996). Therefore, defendant's liability is limited to 1,000 Special Drawing Rights.

FN7. Because I find that defendant's liability is limited on other grounds, I need not address plaintiff's claim that she was not permitted to declare a higher value for her baggage. However, the Court notes that plaintiff has failed to allege any facts showing that she was not afforded an opportunity to do so.

Finally, plaintiff may not recover punitive damages which are expressly prohibited by Article 29 of the Montreal Convention which states that "punitive, exemplary or any other non-compensatory damages shall not be recoverable."

***Conclusion***

For the foregoing reasons, defendant's motion for partial summary judgment is granted. Plaintiff's state law claims are preempted by the Montreal Convention and plaintiff has failed to establish liability for her emotional injuries under the Montreal Convention. In addition, defendant's liability for plaintiff's damaged baggage, if any, is limited to 1,000 Special Drawing Rights. Plaintiff's state law claims are hereby dismissed with prejudice.

**SO ORDERED.**

E.D.N.Y.,2007.
Booker v. BWIA West Indies Ariways Ltd.
Slip Copy, 2007 WL 1351927 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
Casey v. Panalpina, Inc.
E.D.La.,1998.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
Keith M. CASEY
v.
PANALPINA, INC., et al
**No. Civ.A. 97-3360.**

March 12, 1998.

**ORDER and REASONS**

VANCE, J.

*1 Before the Court is plaintiff Keith M. Casey's motion to remand this case to the Civil District Court for the Parish of Orleans, Louisiana. For the reasons that follow, the motion is DENIED.

**I. BACKGROUND**

Plaintiff Keith M. Casey ("plaintiff"), a resident of New Orleans, Louisiana, purchased an antique marble table in Rome, Italy in July of 1996. Plaintiff asserts that defendants Panalpina, Inc. ("Panalpina") and/or Quality Services & Transfer, Inc. ("Quality") were hired to ship the antique table to his New Orleans home. Plaintiff purchased insurance from defendant Neuchatel Swiss General Ins. Co., Ltd. ("Neuchatel") to insure the table's transportation home. Plaintiff alleges that when the table was delivered to his home in October of 1996, the table had been broken in half. Its surface inlay was detached from the table top, and many of its inlaid pieces of marble were broken. Plaintiff had the table repaired at a cost of $1,850.00. Once repaired, the table had to be returned to the plaintiff's home. Defendants Panalpina and/or Quality delivered the table from the repair shop to his home. Plaintiff claims that the defendants broke the table again during its second delivery. Plaintiff had the table was repaired again. Despite repairs costing approximately $2,500, plaintiff contends that the table could not be completely restored to its original state after the second break.

Plaintiff filed this lawsuit against Panalpina, Quality, and Neuchatel in Louisiana state Court on August 13, 1997. Plaintiff's state court petition alleges that defendants are liable for damaging the antique table and the mental anguish and inconvenience plaintiff suffered from dealing with the two accidents. On September 26, 1997, Panalpina filed an answer to the plaintiff's demand, a cross-claim against Quality, and a third-party demand against Transworld Airlines, Inc. ("TWA"). Panalpina claimed that the antique table was actually damaged during its flight from Rome, Italy to New Orleans, Louisiana, and that TWA, the overseas shipper, was therefore directly liable to plaintiff for the table's damage. TWA responded to Panalpina's third-party complaint by removing the state court action to this Court on October 27, 1997. TWA claims that the Court has jurisdiction over plaintiff's suit based on its federal question jurisdiction and 28 U.S.C. § 1441(c). Specifically, TWA claims that Panalpina's claims are governed by the Convention of the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in 49 U.S.C. § 40105, note ("The Warsaw Convention"). Plaintiff asserts that the removal was improper since TWA's co-defendants did not join TWA's removal motion, and Panalpina's claim against TWA is not "separate and independent" from plaintiff's claims. Plaintiff therefore moves the Court to remand this action to state court.

**II. ANALYSIS**

*2 The Court begins by recognizing the fundamental proposition that a federal district court is a court of limited jurisdiction. *See* *Finley v. United States,* 490 U.S. 545, 547-48, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (citing cases); *Nolan v. Boeing Co.,* 919 F.2d 1058, 1064 (5th Cir.1990) ("[T]he federal courts are authorized to hear only those

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cases that Congress by statute authorizes them to hear."). Accordingly, this Court must have congressional authorization to adjudicate every claim presented to it. *Id.* Unless there is statutory authority for the removal of this action, the case must be remanded.

The first inquiry in the Court's analysis is whether a third-party defendant may remove an entire state court action. Section (a) of the federal removal statute provides that "any action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant or the defendants*.... "28 U.S.C. § 1441(a) (emphasis added). In *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 124 (1941), the Supreme Court read this section to limit the right of removal *only* to defendants. *Id.* at 107-108 (emphasis added). Section (c) of the removal statute, however, does not limit its application according to party status. This provision states that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed." 28 U.S.C. § 1441(c). This section's silence concerning party status has evoked a "riotous uncertainty" plaguing removal law. *Harper v. A.M. Sonnabend,* 182 F.Supp. 594, 595 (S.D.N.Y.1960). The federal circuit courts have clearly split over the section's application, and neither Congress nor the Supreme Court has spoken on the issue. *See* *Texas v. $35,180.00,* 951 F.Supp. 113, 114 (S.D.Tex.1996) (citing C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3724 at 168 (2d ed. 1985 & Supp.1996)).

The majority of courts that have considered the issue have limited the application of section (c) to defendants' removal requests. *See, e.g., Thomas v. Shelton,* 740 F.2d 478, 482 (7th Cir.1984); *Lewis v. Windsor Door Co.,* 926 F.2d 729, 731 (8th Cir.1991). The Fifth Circuit, however, has adopted the minority position allowing third-party defendants to remove an entire state court case based on a federal cause of action alleged in a third-party complaint. In *Carl Heck Engineers, Inc. v. LaFourche Parish Police Jury,* 622 F.2d 133, 135 (5th Cir.1980) (superseded by statute on other grounds), the Fifth Circuit held that a defendant's third-party demand for contractual indemnity was sufficient to remove an entire state court case to federal court.FN1 *Id.* The Fifth Circuit's *Carl Heck* holding, however, required the third-party's demand to be "separate and independent" from the plaintiff's main state law cause of action. 28 U.S.C. § 1441(c); *see, e.g.* *Edwards v. E.I. Du Pont De Nemours & Co.,* 183 F.2d 165, 168 (5th Cir.1950) ("We are ... bound to remand this case to the state court unless a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more non-removable claims or causes of actions.").

FN1. At the time *Carl Heck* was decided, § 1441(c) allowed removal for any cause of action "which would be removable if sued upon alone," including diversity. 28 U.S.C. § 1441(c) (1980) Although § 1441(c) has been amended to apply only to federal question claims, the principle of third-party removal remains viable in that context.

***3** In *American Fire & Casualty Company v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the Supreme Court held that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14. In *Carl Heck,* the Fifth Circuit defined a separate and independent claim as "not unrelated to the main claim, but sufficiently independent of it that a judgment in an action between those two parties alone can be properly rendered." *Carl Heck,* 622 F.2d at 136. In *Moore v. United Services Automobile Association,* 819 F.2d 101 (5th Cir.1987), the Fifth Circuit again addressed the meaning of "separate and independent." The court held that "[a] claim is not separate and independent if it is contingent on the other claim." *Id.* This statement departed from the court's *Carl Heck* decision, which held that an in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

demnity claim that was contingent on the outcome of plaintiff's cause of action was a separate and independent claim for § 1441(c) purposes. In *In re Wilson Industries, Inc.*, 886 F.2d 93, 96 (5th Cir.1989), the Fifth Circuit clarified its earlier decisions. In *Wilson*, the Court limited *Carl Heck* by distinguishing between claims for indemnity based on joint liability for tortious conduct and indemnity claims based on separate contractual obligations like the agreement at issue in *Carl Heck*.The Fifth Circuit held that a claim for contribution between joint tortfeasors is not "separate and independent" from a plaintiff's tort claims and therefore does not provide a basis for removal. *Id.* It reasoned that the claim for contribution and/or indemnification between tortfeasors was based on the third-party's alleged negligence toward the plaintiff. Contractual indemnification, on the other hand, is premised on an independent agreement between the defendant and the third-party defendant. This separate contractual agreement is a sufficient basis to remove a state court case to federal court.

Panalpina's third-party demand against TWA is based on a Contract of Affreightment between Panalpina S.P.A.[FN2] and TWA, under which Panalpina Inc. was named the consignee of the cargo. The allegedly damaged table was shipped from Rome to New Orleans pursuant to this agreement. Panalpina therefore has a claim against TWA for any damage sustained by the cargo by virtue of the Contract of Affreightment. Accordingly, Panalpina's claim may be asserted against TWA irrespective of the plaintiff's legal action. It is therefore a separate and independent claim that can serve as a basis for removal.

> FN2. Panalpina S.P.A. is a separate corporate entity from defendant and third-party plaintiff Panalpina, Inc.

Relying on *Lentz v. Applegate*, No. CIV.A. 97-2219, 1997 WL 576396 (E.D.La. Sept.16, 1997), and *Murjani v. Allstate Insurance Co.*, 679 F.Supp. 601, 604 (M.D.La.1988), plaintiff asserts that Panalpina's claim against TWA is not separate and independent.[FN3] In *Lentz*, the plaintiff alleged that his newly purchased ammunition equipment had been damaged during shipment. The plaintiff named four different parties as defendants in his lawsuit. One defendant, Yellow Freight System, Inc., tried to remove the action based on 28 U.S.C. § 1441(c). *Id.* The court held that a single defendant could not remove the state court case unless the claims asserted against it were separate and independent from the claims asserted against the other defendants. Since the *Lentz* plaintiff's claims against the defendants were based upon damages incurred during shipment, the court found that the relief sought by the plaintiff was based on a single wrong arising from a series of interlocked transactions. *Id.* at *2.*Lentz,* however, is readily distinguishable from the present case. The removing defendant in *Lentz* was one of original defendants sued for damaging the plaintiff's property. The plaintiff's cause of action against the removing defendant was indistinguishable from the claims against the other defendants. It was in no way separate and independent of the original cause of action. In this case, Panalpina's claim against TWA is a third-party demand based on a contractual arrangement that does not involve the plaintiff. The claim is unrelated to plaintiff's claims against Panalpina, Quality, and Neuchatel. In fact, plaintiff has not even filed suit against TWA.

> FN3. Plaintiff also asserts that TWA did not properly remove his state court action since Panalpina, Quality, and Neuchatel did not join in its motion for removal. The Court notes, however, that unlike 28 U.S.C. § 1441(b), there is no requirement under § 1441(c) that defendants unanimously consent to removal. *See Hayduk v. United Parcel Service, Inc.*, 930 F.Supp. 584, 594 (S.D.Fla.1996). Section 1441(c) only requires that removal be based upon a claim that is separate and independent from the plaintiff's action.

*4 Plaintiff's reliance on *Murjani v. Allstate Insurance Company*, 679 F.Supp. 601 (M.D.La.1988), is also unavailing. In *Murjani*, the plaintiff filed suit against Allstate Insurance to re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cover for luggage that was lost on an American Airlines flight. Allstate filed a third party complaint against American Airlines on the basis that Allstate would become subrogated to plaintiff's rights if it was held liable on the main demand. *Id.* at 602. American Airlines attempted to remove the state court action based on the Warsaw Convention. The court held that Allstate's claim was not separate and independent since it involved the same issues of who caused plaintiff's alleged loss. Specifically, the court stated that the third-party claim was not separate and independent since it was contingent on the plaintiff's claim. *Id.* at 603. Unlike the third-party plaintiff's claim in *Murjani,* Panalpina's claim against TWA is distinguishable from the plaintiff's claims against the defendants. Panalpina's claim against TWA is based on the parties' contractual arrangement. In *Murjani,* the third-party plaintiff's claim was based on the theory that if called upon to pay, it would be subrogated to plaintiff's rights against the airline.

Even though Panalpina's claim is separate and independent for purposes of § 1441(c), plaintiff's state court action may not be removed to this Court unless Panalpina's third-party complaint presents a federal question. TWA claims that Panalpina's claims are governed by The Warsaw Convention.FN4 "The Warsaw Convention is a treaty of the United States, the interpretation of which is a federal question." *Potter v. Delta Air Lines, Inc.,* 98 F.3d 881, 883 n. 4 (5th Cir.1996) (citations omitted). Panalpina's third-party complaint, however, does not assert the basis on which its claim against TWA is based.

FN4. Article 18 of the Warsaw Convention provides that "[t]he carrier shall be liable for damage sustained in the event of the destruction of, loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air."

In *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456 (5th Cir.1984), the Fifth Circuit held that the Warsaw Convention preempted a plaintiff's state law cause of action. *Id.* at 459; *see Potter,* 98 F.3d at 884. The court stated that "[h]aving concluded that the Warsaw Convention creates the controlling cause of action, we further conclude that it preempts state law in the areas covered.' *Boehringer-Mannheim Diagnostics,* 737 F.2d at 459. Since state law could conflict with the Warsaw Convention's goal of uniformity of international law, state law is preempted by the Convention. *Id.; Potter,* 98 F.3d at 885 ("A primary function of the Warsaw Convention is to foster uniformity in the laws governing international air carrier liability .").FN5 Panalpina's claim against TWA is governed by the Warsaw Convention and therefore presents a federal question. "As the Warsaw Convention is a treaty between the United States and other contracting countries and has become a part of the United States Code, the issues presented raise a federal question, and removal was proper under 28 U.S.C. § 1441 and § 1331." *Romano v. British Airways,* 943 F.Supp. 623, 626 (N.D.W.Va.1996). Accordingly,

FN5. Courts have generally split over whether the Convention completely preempts state law claims so as to support removal jurisdiction. Several courts have held that the Warsaw Convention supports federal court jurisdiction. *See, e.g., Romano v. British Airways,* 943 F.Supp. 623, 626 (N.D.W.Va.1996); *Garcia v. Aerovias de Mexico, S.A.,* 896 F.Supp. 1216, 1217 (S.D.Fla.1995); *Ajibola v. Sabena Belgium Airline,* No. 2479, 1995 WL 552737, at *1-2 (S.D.N.Y. Sept.15, 1995); *Luna v. Compania Panamena de Aviacion, S.A.,* 851 F.Supp. 826, 831 (S.D.Tex.1994); *Jack v. Trans World Airlines, Inc.,* 820 F.Supp. 1218, 1226 (N.D.Cal.1993). Other courts have rejected this argument. *See, e.g., Air Express Int'l v. Aerovias De Mexico S.A. De C.V.,* 977 F.Supp. 1191, 1193 (S.D.Fla.1997); *Lavadenz De Estenssoro v. American Jet, S.A.,* 944 F.Supp. 813, 818 (C.D.Cal.1996); *Campos v. Sociedad Aero-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> *nautica de Medellin Consolidad, S.A.*, 882 F.Supp. 1056, 1059 (S.D.Fla.1994); *Clark v. United Parcel Serv., Inc.*, 778 F.Supp. 1209, 1210 (S.D.Fla.1991); *Alvarez v. Aerovias Nacionales de Colombia, S.A.*, 756 F.Supp. 550, 555-56 (S.D.Fla.1991); *Calderon v. Aerovias Nacionales de Colombia, Avianca, Inc.*, 738 F.Supp. 485 (S.D.Fla.1990).

***5** IT IS ORDERED THAT plaintiff's motion to remand this case Louisiana state court is hereby DENIED.

E.D.La.,1998.
Casey v. Panalpina, Inc.
Not Reported in F.Supp., 1998 WL 118108 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

In re Air Crash at Belle Harbor
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: Air Crash at Belle Harbor, New York on November 12, 2001
Yanet Dishmey Rosario DeGEORGE, individually and on behalf of others, Plaintiff,
v.
AMERICAN AIRLINES, INC., a subsidiary of AMR Corporation, Defendant.
**No. 02 CIV. 4765(RWS), 1448(RWS).**

Oct. 17, 2002.

Wrongful death action was brought in state court against air carrier after crash of passenger jet operated by the carrier. After carrier removed the action to federal district court, plaintiff moved for remand to state court. After transfer of case pursuant to multidistrict litigation order, the District Court, Sweet, J., held that the state law wrongful death claim was completely preempted under the Warsaw Convention, and thus, the state law claim was transmuted into a federal cause of action, federal jurisdiction existed, and removal was proper.

Motion denied.

West Headnotes

**[1] Federal Courts 170B ⚷157**

170B Federal Courts
170BII Venue
170BII(B) Change of Venue
170BII(B)5 Multi-District Litigation; Transfer for Pre-Trial Proceedings
170Bk157 k. Effect of Transfer and Subsequent Proceedings. Most Cited Cases

In deciding motion to remand removed case that was transferred from district court in another federal circuit pursuant to multidistrict litigation order after plaintiff filed the remand motion, to extent law of the two circuits differed, transferee court would apply its circuit's interpretation of federal law, not the constructions of federal law of the transferor court's circuit.

**[2] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

State law wrongful death action against air carrier arising from death of passenger in plane crash on international flight was completely preempted under the Warsaw Convention, and thus, the state law claim was transmuted into a federal cause of action, federal jurisdiction existed, and removal was proper. 28 U.S.C.A. § 1441(b).

Schaden, Katzman, Lampert & McClune, Broomfield, CO, By Richard F. Schaden, Esq., Of Counsel, Smith & Smith, Fort Worth, TX, By Daniel J. Smith, Esq., Of Counsel, for Plaintiff.
Condon & Forsyth, New York, By Desmond T. Barry, Jr., Esq., Of Counsel, for Defendant.
Kreindler & Kreindler, New York, By Steven R. Pounian, Esq., Of Counsel, Liaison Counsel.

OPINION

SWEET, D.J.

*1 Plaintiff Yanet Dishmey Rosario DeGeorge ("DeGeorge") has moved to remand this action arising from the crash of American Flight 587 in Belle Harbor, New York to Texas state court.

For the following reasons, that motion is denied.

*Procedural History*

On November 12, 2001, an Airbus A300-600 aircraft (registration N14053) manufactured by Airbus Industrie ("Airbus") and operated by defendant American Airlines ("American") as Flight 587

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

crashed at Belle Harbor, New York shortly after takeoff from John F. Kennedy International Airport ("JFK Airport") en route to Santo Domingo, Dominican Republic. The accident resulted in the deaths of all 251 passengers and nine crew members on board the aircraft and the deaths of five persons on the ground, as well as personal injures and property damage. DeGeorge commenced suit to recover damages for the death of Milton George, a passenger on Flight 587.

*The MDL Proceedings*

More than 206 actions have been filed as a result of the Flight 587 crash. By order dated April 22, 2002, the Judicial Panel on Multidistrict Litigation (the "Judicial Panel") transferred 28 actions arising from the accident to this Court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* 203 F.Supp.2d 1379 (J.P.M.L.2002). The Judicial Panel found that:

this litigation involve[s] common questions of fact, and that centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions concern the cause or causes of the crash of American Airlines Flight 587 on November 12, 2001. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pre-trial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

*Id.* at 1380.

Since the April 22, 2002 order, the Judicial Panel has issued a number of Conditional Transfer Orders transferring tagalong cases to the Southern District of New York pursuant to J.P.M.L. Rule 7.4 and 28 U.S.C. § 1407. One of those orders, dated May 28, 2002 ("CTO-2"), transferred 43 such actions, including this one.

In addition, 72 actions were filed in the Southern District of New York and are pending before this Court. Thus, of the 206 actions, more than 180 are pending before this Court.

*The Complaint, Removal and Motion to Remand*

DeGeorge commenced this action on April 25, 2002 in the District Court of Dallas County, Texas seeking to recover damages for the death of Milton George. The complaint asserts, *inter alia:*

- American is a scheduled air carrier certified to operate pursuant to 14 C.F.R. Part 121 (Compl.¶ 2);
- Decedent George was a passenger on Flight 587 (Compl.¶ 7, 11, 12);
- Flight 587 de parted JFK Airport en route to Santo Domingo, Dominican Republic (Compl.¶ 3);

***2** • George was killed in the Flight 587 crash as a result of American's negligence in the operation, maintenance and inspection of the aircraft and training of the American flight crew (Compl.¶¶ 3, 9).

*The Removal*

On May 16, 2002, American timely removed this action to the Northern District of Texas pursuant to 28 U.S.C. §§ 1331 and 1441 on the basis of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.s. no. 876, 137 L.N.T.S. 11 (1934), as amended by the Protocol done at The Hague, 1995 and by Protocol No. 4 of Montreal, 1975, *reprinted in* S. Exec. Rep., No. 105-20 pp. 21-32 (1998) (the "Warsaw Convention") and the Federal Aviation Act of 1958, Pub.L. No. 85-726 (recodified as amended in 49 U.S.C. § 40101*et seq.*) (the "Aviation Act"). The complaint does not specifically refer to the Warsaw Act or the Aviation Act.

*The Motion to Remand*

DeGeorge filed a motion to remand this action to Texas state court on June 14, 2002. Although American's opposition was to be filed in the Northern District of Texas on July 5, 2002, the case was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

transferred to this Court pursuant to CTO-2, which became effective on June 20, 2002.

In light of the transfer of the action pursuant to CTO-2, the motion to remand filed by DeGeorge in the Northern District of Texas now must be decided by this Court. *Ivy v. Diamond Shamrock Chems. Co.*, 901 F.2d 7, 9 (2d Cir.1990); *Medical Society of the State of New York v. Connecticut Gen'l Corp.*, 187 F.Supp.2d 89, 91 (S.D.N.Y.2001); *In re NASDAQ Market Makers Antitrust Litig.*, 929 F.Supp. 174, 177 (S.D.N.Y.1996).

*Discussion*

I. *Second Circuit Law Controls*

[1] In deciding this motion to remand, the MDL transferee court "should apply its interpretation of federal law, not the constructions of the federal law of the transferor court."*In re NASDAQ Market*, 929 F.Supp. at 177 (collecting cases); *see* Coker v. *Pan Am. World Airways, Inc.*, 950 F.2d 839, 847 (2d Cir.1991). Therefore, to the extent that Fifth Circuit law differs from Second Circuit law, the latter controls.

II. *Standard of Review*

The party seeking to preserve removal has the burden of proving federal removal jurisdiction. *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir.1994); *Pan Atlantic Group, Inc. v. Republic Ins. Co.*, 878 F.Supp. 630, 637 (S.D.N.Y.1995).

Section 1441(b) provides that a defendant may remove any action filed in state court to federal court that is "founded on a claim or right arising under the Constitution, treaties or laws of the United States."The determination of whether a claim "arises under" a federal law or treaty is determined by reference to the "well-pleaded complaint." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Marcus v. AT & T Corp.*, 138 F.3d 46, 52-53 (2d Cir.1998). The well-pleaded complaint rule provides that federal question jurisdiction is present only when plaintiff's cause of action, as set forth in the complaint, is based on federal law. *Id.* Under this rule, the plaintiff is the "master of his complaint," and is free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available. *Id*.

***3** There is no dispute that DeGeorge's complaint does not contain a federal claim. Yet even if a federal cause of action does not appear on the face of the complaint, federal jurisdiction may still exist if one of two rules applies: (1) the "complete pre-emption" doctrine; or (2) the "artful pleading" doctrine.

In *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) the Supreme Court explained the complete pre-emption doctrine as follows:

On occasion ... the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* at 393 (citations omitted); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."). The Second Circuit test for whether an action is completely pre-empted by federal law turns on whether Congress has clearly manifested an intent to make a cause of action removable to federal court. *E.g.*, *Marcus*, 138 F.3d at 54 (looking to whether Congress has manifested intent to disallow state claims in a particular field); *Fax Telecommunicaciones, Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir.1998).

Because the law at issue is a treaty, rather than an Act of Congress, the focus is on the treaty itself

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and the intent of the treaty partners. *E.g., Tseng,* 525 U.S. at 175 ("[T]he nation-state, not subdivisions within one nation, is the focus of the [Warsaw] Convention and that perspective of our treaty partners. Our home-centered preemption analysis, therefore, should not be applied, mechanically, in construing our international obligations."); *see also* *In re World War II Era Japanese Forced Labor Litig.,* 164 F.Supp.2d 1160, 1167 (C.D.Cal.2001) (analysis of preemption of a treaty focuses on intent of treaty's contracting states and text); *Asante Techs. v. PMC-Sierra, Inc.,* 164 F. Supp .2d 1142, 1150-51 (N.D.Cal.2001) (same).

III. *Application*

[2] There is no question that DeGeorge's claims are within the scope of Article 17 of the Warsaw Convention, in that they seek damages "for the death or wounding of a passenger" caused by an "accident on board [an] aircraft" in international transportation. Warsaw Convention, arts. 1, 17. The parties apparently concede this point. Pl.'s Reply Mem. at 5. Thus, whether removal was proper depends upon whether state law claims that are within the scope of the Warsaw Convention are completely pre-empted and thus are transmuted into a federal cause of action.

Although the Second Circuit has yet to weight in on this issue, it has held that "[i]t is now well-established that '[a]ll state law claims that fall within the scope of the [Warsaw] Convention are preempted." ' *Shah v. Pan Am. World Servs. Inc.,* 148 F.3d 84, 97-98 (2d Cir.1998) (*citing* *Fisherman v. Delta Air Lines, Inc.,* 132 F.3d 138, 141 (2d Cir.1998)). The Court reasoned that the Convention's two primary goals-to establish uniformity in the aviation industry and to limit air carriers' potential liability in the face of accidents-supported this reasoning. The Supreme Court in dictum has expressed a similar notion. *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("[R]ecovery for a personal injury ..., if not allowed under the [Warsaw] Convention, is not available at all.").

***4** It follows from this rule that if DeGeorge were to rely solely on her complaint, which is comprised entirely of state law claims that fall within the scope of the Warsaw Convention, that complaint would be subject to dismissal for failure to state a state law claim as those claims are pre-empted by the Warsaw Convention. *E.g.* *Watson v. American Airlines, Inc.,* 2002 WL 1359747 (D.Md. June 20, 2002) (dismissing state claims for failure to state a claim as pre-empted by Warsaw Convention). As a result, in this situation, unless DeGeorge amends her complaint to add a Warsaw Convention claim, she has no claim. This fact supports a finding that international air travel is so completely pre-empted that a well-pleaded state-law complaint necessarily becomes a federal claim.[FN1] To allow a remand in this situation would permit artful pleading by framing what must necessarily be a Warsaw Convention claim as a state law claim.

FN1. As DeGeorge points out, the fact that federal law pre-empts a state law cause of action is by itself insufficient to amount to complete pre-emption. *E.g.,* *Fax Telecommunicaciones, Inc. v. AT & T,* 138 F.3d 479, 486 (2d Cir.1998). Normally, however, the defense of federal pre-emption does not sound the death knell for the entirety of a plaintiff's state law claims.

A number of courts have similarly found that removal was appropriate because the Warsaw Convention completely pre-empts state law causes of action, including the Court of Appeals for the Eighth Circuit and two district courts within the Second Circuit. *E.g.,* *Husmann v. Trans World Airlines, Inc.,* 169 F.3d 1151, 1152-53 (8th Cir.1999) (affirming removal of Warsaw Convention case under complete pre-emption doctrine); *Donkor v. British Airways Corp.,* 62 F.Supp.2d 963, 967 (E.D.N.Y.1999) ("[D]efendants are correct in their assertion that the Warsaw Convention completely preempts the claims that it governs ...."); *Ajibola v. Sabena Belgium Airline,* 1995 WL 552737 (S.D.N.Y. Sept.15, 1995) (denying remand on basis of complete pre-emption).*See also* *Casey v. Panalpina, Inc.,* 1998 WL 1198108, at *4 (E.D.La.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

March 12, 1998) (denying remand of Warsaw Convention claim based upon complete pre-emption); *Luna v. Compania Panamena de Aviacion, S.A.*, 851 F.Supp. 86, 831 (S.D.Tex.1994) (same). In addition, the court in *Jack v. Trans World Airlines, Inc.*, 820 F.Supp. 1218 (N.D.Cal.1993) engaged in an extremely thoughtful analysis of the text and drafting history of the Warsaw Convention to arrive at the same conclusion. This Court is in accord with the above authority for the reasons stated therein, and thus DeGeorge's motion must be denied.

After the submission of this motion, DeGeorge proffered the decisions in two related cases in the Northern District of Texas that held oppositely. *Perez v. American Airlines*, 02 Civ. 1235, slip op. (Oct. 2, 2002) (granting motion to remand); *Cabral v. American Airlines, Inc.*, 02 Civ. 1234, slip op. (Oct. 8, 2002) (relying on *Perez* and granting motion to remand).FN2 In *Perez*, the Honorable A. Joe Fish found that the Warsaw Convention creates the exclusive cause of action for the death or injury of airline passengers and that federal courts had jurisdiction to hear such claims. However, because concurrent state court jurisdiction exists for Warsaw Convention claims, Chief Judge Fish determined that there was no "intent to confer exclusive federal jurisdiction over claims governed by the Warsaw Convention."*Perez*, slip op. at 7.

FN2. As an initial matter, these cases relied on Fifth Circuit precedent and its three-prong test for complete pre-emption. *Id.*

***5** A state cause of action may be completely pre-empted by federal law even if concurrent jurisdiction exists. "Even where federal law completely pre-empts state law, state courts may have concurrent jurisdiction over the federal claim if the defendant does not remove the case to federal court."*Asante Techs.*, 164 F.Supp.2d at 1152. Indeed, the test for complete pre-emption in the Fifth Circuit depends upon a Congressional intent that the case may, rather than must, be removable to federal court. *Rogers v. American Airlines*, 192 F.Supp.2d 661 (N.D.Tex.2001). In any case, these opinions are not controlling on this Court.

In addition, DeGeorge suggests that because the Warsaw Convention provides for the application of local law in certain provisions that the claim is not completely pre-empted. This argument does not suitably overcome the authority cited above.

Because removal was proper under the complete pre-emption doctrine, there is no need to address American's other contentions with regard to the propriety of removal.

*Conclusion*

For the foregoing reasons, DeGeorge's motion is denied.

It is so ordered.

S.D.N.Y.,2002.
In re Air Crash at Belle Harbor
Not Reported in F.Supp.2d, 2002 WL 31356266 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

Knowlton v. American Airlines, Inc.
D.Md.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Maryland.
Myra KNOWLTON, Plaintiff,
v.
AMERICAN AIRLINES, INC., Defendant.
**Civil Action No. RDB-06-854.**

Jan. 31, 2007.

Jonathan A. Azrael, Azrael Gann and Franz LLP, Towson, MD, for Plaintiff.
Amir C. Tayrani, Wayne A. Schrader, Gibson Dunn and Crutcher LLP, Washington, DC, for Defendant.

***MEMORANDUM OPINION***

RICHARD D. BENNETT, United States District Judge.

*1 Myra Knowlton ("Plaintiff" or "Knowlton") has brought this breach of contract claim against American Airlines, Inc. ("Defendant" or "AA") because she contends that she was not provided a free breakfast as promised on an American Airlines flight in November of 2005. On March 3, 2006, she filed a one-count complaint in the Circuit Court for Baltimore County on behalf of herself and similarly situated persons whom she also contends were denied a free breakfast. On March 31, 2006, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(b), alleging that Plaintiff's claim arose under either the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention") or the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention"). Pending before this Court is Plaintiff's Motion to Remand (Paper No. 13). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D.Md.2004). For the reasons stated below, Plaintiff's Motion to Remand is DENIED.

*BACKGROUND*

In November of 2005, Plaintiff Myra Knowlton booked a round-trip ticket with American Airlines to fly from BWI Airport in Baltimore, Maryland to the Dominican Republic, connecting through San Juan, Puerto Rico on the first leg of the trip and Miami, Florida on the return trip. Plaintiff received an electronic confirmation of her travel itinerary from AA which included the notation "breakfast" on the flight from BWI Airport to San Juan on January 26, 2006. According to Knowlton, this notation created a contractual obligation between herself and the Defendant for the airline to provide her with a complimentary breakfast. However, Plaintiff did not receive a free breakfast while on that flight. Rather, she was told that AA no longer provides complimentary meals and that she could purchase breakfast for $3.00.

On March 3, 2006, Plaintiff filed a class action complaint against the Defendant in the Circuit Court for Baltimore County, Maryland on behalf of herself and others similarly situated, alleging breach of contract. On March 31, 2006, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(b), alleging that Plaintiff's cause of action arises under either the Warsaw or Montreal Convention and is therefore a federal question. On April 28, 2006, Plaintiff filed a Motion to Remand arguing that removal was improper because her breach of contract claim does not arise under the Warsaw and Montreal Conventions. The treaties, she argues, only address claims for personal injury, property damage, and damage caused by delay arising during international flights. Defendant responds that even though the Montreal Convention did not specifically discuss carrier liability for the alleged breach of contract at issue in this case, the treaty nonetheless completely preempts Plaintiff's claim.FN1

FN1. In its Notice of Removal, Defendant argued that Plaintiff's claim arises under either the Warsaw Convention or the

Montreal Convention. (*See* Notice of Removal ¶¶ 4-5.) Defendant later explained that it could not determine which of the two treaties applies because Plaintiff's complaint did not specify whether the flight in question was one-way or part of a round-trip ticket. (*See* Def.'s Mem. Opp'n Mot. Remand 8-9.) Both treaties apply to flights between countries that are members of the treaty as well as round-trip flights from a member country where at least one stop is in a different country. Warsaw Convention at art. 1 ¶ 2; Montreal Convention at art. 1 ¶ 2. Plaintiff's destination was the Dominican Republic, which is a party to the Warsaw Convention but not the Montreal Convention. *See* U.S. Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2006, *available at* http://www.state.gov/documents/organization/65515.pdf (last visited Dec. 19, 2006). Thus, a one-way trip from the United States to the Dominican Republic would only be governed by the Warsaw Convention while a round-trip ticket would be governed by the superseding Montreal Convention. See *infra* Analysis Part I for a comparison of the two treaties and a discussion of which applies in this case. Now that it is clear that Plaintiff's ticket was round-trip, Defendant argues for preemption solely by the Montreal Convention. (*Id.*)

*STANDARD OF REVIEW*

***2** The burden of establishing federal jurisdiction rests with the party seeking removal. *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583-84 (4th Cir.2006) (citing *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994)). Removal jurisdiction raises "significant federalism concerns," and therefore must be strictly interpreted. *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151). In other words, " '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.' " *Dixon*, 369 F.3d at 816 (alterations in original) (quoting *Mulcahey*, 29 F.3d at 151 (citations omitted)). This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

*ANALYSIS*

**I. The Montreal Convention**

The Convention for the Unification of Certain Rules for International Carriage by Air, otherwise known as the Montreal Convention, was signed in that city on May 28, 1999, and entered into force on November 4, 2003. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45 [hereinafter "the Montreal Convention"]. The United States is a party to the Montreal Convention.[FN2] The Montreal Convention supersedes the much older Warsaw Convention. Article 55 of the Montreal Convention, entitled "Relationship with Other Warsaw Convention Instruments," provides:

FN2. *See* U.S. Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2006, *available at* http://www.state.gov/documents/organization/65515.pdf (last visited Dec. 19, 2006).

This Convention shall prevail over any rules which apply to international carriage by air: 1. between States Parties to this Convention by virtue of those States commonly being party to (a) the [Warsaw Convention]; (b) [the Hague Protocol]; ... (e) [the Montreal Protocol]; or 2. Within the territory of any single State Party to this Convention by virtue of that State being Party to one or more of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the instruments referred to in sub-paragraphs (a) to (e) above.

Montreal Convention at art. 55. Like its predecessor, the Montreal Convention's purpose is to promote uniformity in the laws governing airliner liability for the "international carriage of persons, baggage or cargo performed by aircraft."*Id.* at art. 1. However, the Montreal Convention is unique in that it "represents a significant shift away from a treaty that primarily favored airlines to one that continues to protect airlines from crippling liability, but shows increased concern for the rights of passengers and shippers."*Weiss v. El Al Israel Airlines, Ltd.,* 433 F.Supp.2d 361, 364-65 (S.D.N.Y.2006).

The Montreal Convention imposes three categories of strict liability on air carriers. Article 17 provides for carrier liability in the event of accidental death or bodily injury of a passenger while on board, embarking, or disembarking the plane. Montreal Convention at art. 17. Article 17 also includes liability for damage to or loss of baggage. *Id.* Article 18 of the Montreal Convention addresses liability for damage to cargo, and Article 19 imposes liability for damages resulting from delay of passengers, baggage, or cargo. *Id.* at arts. 18-19. These categories are meant to be exclusive and encompass the scope of international airline liability. Article 29 of the treaty contains an express statement of exclusivity: "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention...."*Id* . at art. 29.

## II. Removal Jurisdiction

*3 AA removed Knowlton's claim to this Court pursuant to 28 U.S.C. § 1441(b), alleging that this Court has subject matter jurisdiction over her claim because it arose under an international treaty. Plaintiff filed the instant Motion to Remand, contending that her claim does not arise under a treaty of the United States. Thus, the precise question before this Court is whether the Montreal Convention completely preempts Knowlton's common law breach of contract claim.

### A. Well-Pleaded Complaint Rule

Whether a claim arises under a federal or international law for removal purposes is determined by the "well-pleaded complaint rule." *See Rivet v. Regions Bank,* 522 U.S. 470, 475 (1998)."Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).

Plaintiff's Complaint does not mention the Montreal Convention, nor does the treaty "create" her state common law cause of action. Instead, her Complaint simply purports to state a claim for breach of contract. (*See* Compl. ¶¶ 13-19.) Likewise, her right to relief does not "necessarily depend[ ] on resolution of a substantial question of federal law."Accordingly, Defendant cannot establish removal jurisdiction under the traditional standards of the well-pleaded complaint rule. In limited circumstances, however, the doctrine of complete preemption provides an alternative means of satisfying the well-pleaded complaint rule.

### B. Complete Preemption

Ordinarily, federal preemption serves as a defense to state law claims. However, as long as the plaintiff's cause of action does not "arise under" federal law, a federal preemption defense cannot serve as the basis of federal question jurisdiction. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). Because it cannot support federal question jurisdiction, therefore, ordinary preemption does not authorize removal to federal court. *Id.* Accordingly, this Court must address the issue of complete preemption.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In this case, Defendant has asserted *complete* preemption as the basis for federal question removal jurisdiction. (Def.'s Mem. Opp'n Mot. Remand 5-7.) "Under complete preemption a state claim arises under federal law when Congress 'so completely pre-empts a particular area that any civil complaint raising the select group of claims is necessarily federal in character.' " *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir.2005) (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63-64). "[T]he doctrine of *complete* preemption 'converts an ordinary state common law complaint into one stating a federal claim,' and the federal claim is deemed to appear on the face of the complaint." *Pinney*, 402 F.3d at 449 (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir.2002)) (emphasis added). Thus, if Defendant can show that the Montreal Convention completely preempts Plaintiff's breach of contract claim, then removal was appropriate.

***4** Courts have only been willing to find complete preemption in a very small number of cases.

The Supreme Court has admonished that federal law should be found to completely preempt state law "only in statutes with 'extraordinary' preemptive force."To date, the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 21 et seq.

*Dunlap v. G & L Holding Group, Inc.*, 381 F.3d 1285, 1291 (11th Cir.2004) (citations omitted). It is no surprise, then, that "the Court has articulated exacting standards that must be met before it will find complete pre-emption."*Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir.2005).

As the Montreal Convention entered into force on November 4, 2003, there is limited authority in its interpretation. At least one lower court has held that the treaty *preempts* state law claims. In *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106 (S.D.N.Y.2004), the District Court for the Southern District of New York held that the plaintiff's breach of contract claim for a flight cancellation was preempted by both the Montreal and Warsaw Conventions, because the treaties "preempt all state law claims within their scope."[FN3] *Paradis*, 348 F.Supp.2d at 111, 114. The court noted that the exclusivity provisions of the Montreal and Warsaw Conventions are very similar and that "the preemptive effect is identical." *Id.* at 111.Thus, to supplement the scarce case law on the Montreal Convention, this Court will look to cases analyzing the older Warsaw Convention for guidance.

FN3. The court did not actually reach the question of whether the Warsaw or Montreal Convention applied, because it found the two treaties had the same preemptive effect. *Paradis*, 348 F.Supp.2d at 111.

In *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999), the Supreme Court held that the Warsaw Convention preempts all state-law personal injury actions within its scope, even if damages would not be recoverable under the treaty. (Def.'s Mem. Opp'n Mot. Remand 15.) Accordingly, this Court has previously cited the Supreme Court's opinion in *Tseng* to hold that the Warsaw Convention preempted state law claims. *See Watson v. Am. Airlines, Inc.*, 2002 WL 1359747, at *1 (D. Md. June 20, 2002) (granting motion to dismiss complaint alleging only state law tort claims for food poisoning suffered during international flight). While the Supreme Court did not expressly rule that there was *complete* preemption under the Warsaw Convention, several courts have addressed that issue and taken the position that the Warsaw Convention completely preempts all claims arising out of international flights.[FN4] *See, e.g., Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir.1999) (state tort claim for personal injuries); *Singh v. N. Am. Airlines*, 426 F.Supp.2d 38, 45 (E.D.N.Y.2006) (state tort claims for personal injuries); *Donkor v. British Airways, Corp.*, 62 F.Supp.2d 963, 967 (E.D.N.Y.1999) (state tort and breach of contract claims for damages due to deten-

tion after a long delay).

FN4. Defendant filed a Notice of Lodging Supplemental Authority (Paper No. 24) to inform this Court of a recent Fifth Circuit Court of Appeals opinion, *Mbaba v. Societe Air France,* 457 F.3d 496 (5th Cir.2006), in which the court held that breach of contract and fraud claims for excess baggage fees were preempted by the Warsaw Convention. (*See* Def.'s Notice of Lodging Supp'l Auth.) However, *Mbaba* did not address the issue of *complete* preemption in the removal context and is, therefore, distinguishable from this case.

***5** In contrast, Plaintiff points to cases in which state law claims were not preempted by the Warsaw Convention because they were outside the treaty's scope. *See, e.g., Wolgel v. Mexicana Airlines,* 821 F.2d 442 (7th Cir.1987), *cert. denied,*484 U.S. 927 (1987) (holding that the plaintiff's claim for nonperformance of contract as a result of being "bumped" did not fit into any of the three categories of liability); *O'Callaghan v. AMR Corp.,* 2005 WL 1498870, at *1 n. 1 (N.D.Ill. Jun. 8, 2005) (holding that breach of contract claim for failure to provide advertised leg room was not preempted by the Warsaw Convention because the "claim s[ought] damages only for the nonperformance of the contract, not for any injury that occurred because of that nonperformance"); *see also Donkor,* 62 F.Supp.2d at 967 ("[W]hile defendants are correct in their assertion that the Warsaw Convention completely preempts the claims that it governs, they are incorrect to imply that the Convention governs all claims arising out of international transportation.").

There is clearly a split of authority over whether the Montreal Convention and its predecessor completely preempt state law claims such as this one. However, this Court is persuaded by the reasoning of those cases finding in favor of preemption. The treaties were designed to create a uniform system of liability among airlines for claims arising from international flights. *See Tseng,* 525 U.S. at 169 ("Given the [Warsaw] Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations."). As a matter of public policy, airlines should not be subject to contract claims in state courts involving a three-dollar breakfast.

Accordingly, Plaintiff's Motion to Remand is DENIED.

*CONCLUSION*

For the reasons stated above, Plaintiff's Motion to Remand (Paper No. 13) is DENIED.

D.Md.,2007.
Knowlton v. American Airlines, Inc.
Slip Copy, 2007 WL 273794 (D.Md.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Small v. America West Airlines, Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Ronald J. SMALL, Plaintiff,
v.
AMERICA WEST AIRLINES, INC., et al., Defendants.
**Civil No. 05-3793 (AET).**

Oct. 30, 2007.

***MEMORANDUM & ORDER***

THOMPSON, U.S.D.J.

***1** This matter is before the Court upon Plaintiff Ronald J. Small's Motion for Reconsideration of the Court's Opinion and Order, signed and entered on August 30, 2007 [docket no. 18]. The Court has decided this Motion after considering the written submissions of the parties and without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, Plaintiff's Motion is denied.

*BACKGROUND*

The Court incorporates by reference the factual summary provided in its Opinion and Order entered August 30, 2007 ("August 30th opinion"). In the August 30th Opinion, the Court found that federal law preempted several of Plaintiff's state claims, and granted Defendants America West Airlines and U.S. Airways, Inc.'s Motion to Dismiss with respect to those federal claims as being time-barred. The Court then granted Plaintiff's Motion to Remand with respect to the remaining state claims. Plaintiff filed this instant Motion on September 21, 2007, and seeks reconsideration of the Court's dismissal of Count Four, a claim brought pursuant to the New Jersey Consumer Fraud Act ("Consumer Fraud Act"), N.J. Stat. Ann. § 56:8-1 et seq.

*DISCUSSION*

*A. Standard of Review*

A court will grant a motion for reconsideration only if the movant establishes: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999) (citing *N. River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)). A party moving for reconsideration must serve and file the motion within ten business days after the entry of judgment on the original motion. D.N.J. Civ. R. 7.1(i). A party making a motion for reconsideration must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge ... has overlooked." *Id.* In other words, the movant may address only matters that were presented in its original motion to the Court, but were not considered by the Court in making the decision at issue. *United States v. Compaction Sys. Corp.,* 88 F.Supp.2d 339, 345 (D.N.J.1999). However, a party asserting a difference of opinion with a court's decision should not bring a motion for reconsideration; rather, he or she should seek relief through the normal appellate process. *Chicosky v. Presbyterian Med. Ctr.,* 979 F.Supp. 316, 318 (D.N.J.1997). "[R]econsideration is an extraordinary remedy, that is granted very sparingly." *Brackett v. Ashcroft,* No. 03-3988, 2003 U.S. Dist. LEXIS 21312, at *5 (D.N.J. Oct. 7, 2003) (internal citation and quotations omitted).

*B. Analysis*

Defendants argue that Plaintiff's Motion should be denied because he filed this Motion on September 21, 2007, more than ten business days after the entry of judgment by the Court on August 30, 2007. In reply, Plaintiff argues that, because he is not an electronic case filer, he did not receive the Court's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

decision in time to file his Motion within the ten-day deadline imposed by Local Civil Rule 7.1(i). Although the Court is aware that Local Civil Rule 7.1(i) directs that a motion for reconsideration "shall be served and filed within [ten] business days after the entry of the order or judgment on the original motion," it is mindful that mailings of decisions by the Court may take several days to reach litigants who do not use the electronic case filing system. Accordingly, the Court will consider Plaintiff's Motion on its merits.

***2** In its August 30th Opinion, the Court held that Count Four of Plaintiff's Complaint is preempted by the Warsaw Convention as Amended at the Hague, 1955, and by Protocol No. 4 of Montreal, 1975 ("the Convention"). In Count Four, Plaintiff brought a cause of action under the Consumer Fraud Act for Defendant's alleged failure to investigate his lost baggage claim. In its discussion of whether the Convention preempted Plaintiff's state claims, the Court cited Article 29 of the Convention, which provides that:

> [i]n the carriage of passengers, baggage and cargo, any actions for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

Warsaw Convention, art. 29. The Court also cited case law holding that, in the case of international carriage, the Warsaw Convention "exclusively govern [s] the rights of the parties to an action for damages and preempt[s] all other causes of action."*Waters v. The Port Auth. of N.Y. and N.J.*, 158 F.Supp.2d 415, 424 (D.N.J.2001) (citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999)).

Here, Plaintiff argues that Count Four does not seek damages from Defendant for the loss of his baggage. Instead, Plaintiff argues that he was prevented from filing an insurance claim for his lost luggage because Defendants denied losing it. As a result, Plaintiff asserts that Defendants' denial caused him to suffer "damages because the defendant lied or misspoke thereby committing a tortous [sic] act" (Pl.'s Mot. for Reconsideration, ¶ 4), since, as a result of Defendants' alleged misrepresentations, Plaintiff was prevented from filing an insurance claim for the lost luggage. The Court is not convinced by Plaintiff's conclusory assertion that this constitutes an action separate from one for damages "[i]n the carriage of ... baggage," particularly when the terms of the Convention apply to actions sounding in tort.

Plaintiff has not attempted to show an intervening change in controlling law and points to no newly available evidence in support of his Motion. The Court finds that Plaintiff has not sustained his burden of showing a clearly erroneous determination of law or fact in the Court's August 30th Opinion. Nor has Plaintiff suggested that dismissal of Count Four was manifestly unjust. Therefore, the Court denies Plaintiff's Motion for Reconsideration.

*CONCLUSION*

For the foregoing reasons, and for good cause shown,

IT IS on this 29th day of October, 2007,

ORDERED that Plaintiff Ronald J. Small's Motion for Reconsideration [20] is DENIED.

D.N.J.,2007.
Small v. America West Airlines, Inc.
Slip Copy, 2007 WL 3231796 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.