C
Wysotski v. Air Canada
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Andrew WYSOTSKI and Lori Learmont, Plaintiffs,
v.
AIR CANADA, et al., Defendants.
**No. C 02-04952 CRB.**

March 6, 2006.

Corey Allen Evans, San Francisco, CA, for Plaintiffs.
Mitchell J. Popham, Lord Bissell & Brook, Los Angeles, CA, for Defendants.

ORDER OF DISMISSAL

CHARLES R. BREYER, J.

***1** Plaintiffs filed this lawsuit approximately four years ago seeking to recover damages for the loss of FU, their pet cat, in transport by air from Toronto to San Francisco. Now before the Court is defendant Air Canada's motion to dismiss for lack of jurisdiction. After carefully considering the parties' briefing papers, as well as the record in this case, and with the benefit of oral argument, this action on behalf of FU appears to have reached its ninth life. For the following reasons, defendant's motion is hereby GRANTED.

## BACKGROUND

### I. Case History

On August 23, 2001, plaintiffs flew on Air Canada from Toronto to San Francisco with their five pet cats. Three of the cats, including 14-year-old FU (apparently pronounced "EFF-YOU"), were housed in individual, airline-approved cat crates; the remaining two cats shared a fourth crate. According to plaintiffs' amended complaint, defendant Air Canada assured plaintiffs that their cats would be handled with care, and that the crates would be hand-carried on and off the airplane. Am. Compl. ¶ 12.

When the plane landed at San Francisco International Airport, ramp personnel from defendant Continental Airlines were allegedly responsible for unloading baggage, including plaintiffs' cats. Plaintiffs claim that when they went to baggage claim to retrieve the cats, they discovered that the crate that had contained FU was damaged and that FU was missing. On information and belief, plaintiffs allege that the damage resulted because "[t]he crates were placed on a steep ramp that led down from the airplane and the crates accelerated down the ramp, smashing into the ground."Am. Compl. ¶ 17. Although Air Canada permitted plaintiffs to search for FU in the area around the airplane for twenty minutes, FU was never located.

Plaintiffs filed suit against Air Canada and Continental Airlines, asserting a claim under the Warsaw Convention as well as state law claims for negligence, negligent infliction of emotional distress, fraud, false advertising, and violation of California Civil Code section 3340. The action against Air Canada was stayed pending the company's bankruptcy reorganization. During that time, Court issued orders denying Continental Airlines' motions to dismiss and partial summary judgment before Continental was dismissed from the case after it reached a settlement with plaintiffs.

### II. Current Motion

Plaintiffs have sought to lift the stay now that Air Canada's reorganization is complete and pursue their claims in this Court against "insurance proceeds only." Defendants contend that, as a result of the discharge of all claims against Air Canada and the satisfaction of plaintiffs' claim during the bankruptcy proceeding, plaintiffs have no valid claims remaining for the Court to adjudicate.

The bankruptcy proceeding took place in Canada with an ancillary proceeding in the South-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ern District of New York. As part of that proceeding, plaintiffs submitted an unsecured claim. *See* Declaration of Jeri Rouse Looney, Ex. 1.FN1 The proof of claim form included an explanation for "Excluded Claims," which noted that "that portion of a claim arising from a cause of action for which the Applicants [Air Canada] are fully insured."*Id.* at 5.

FN1. Defendant has requested, and plaintiffs have not opposed, that the Court take judicial notice of the relevant documents pertaining to the bankruptcy proceedings in Canada and the United States. Pursuant to Federal Rule of Evidence 201(d), the Court grants the request.

***2** The Monitor appointed by the Ontario Superior Court awarded plaintiffs CAD$333.91 (US$226.75) for a violation of the Warsaw Convention. *See* Looney Decl., Ex. 2. The Monitor limited the award to the damage calculation called for under Article 22(2) of the Warsaw Convention, which assigns an award of US $9.07 per pound. *Id.* The Monitor estimated that FU and its crate weighed 25 pounds and calculated the award accordingly. *Id.* The Monitor noted that the Warsaw Convention exclude punitive and emotional damages, and noted that Air Canada would only be liable for up to CAD$1,500, which corresponded to the deductible payable by Air Canada under its insurance policy covering the claim. In addition, the Notice of Revision (Monitor's decision) included the following caveat:

If you intend to dispute a Notice of Revision or Disallowance, you must, within 10 calendar days of the date of this Notice of Revision or Disallowance, deliver a Dispute Notice.... If you do not deliver a Dispute Notice, the value of your Claim shall be deemed to be as set out in this Notice of Revision or Disallowance.

*Id.* Plaintiffs did not dispute the award and accepted two shares of stock as satisfaction.

On September 28, 2004, the Bankruptcy Court gave full force and effect in the United States to the Canadian Court order sanctioning and approving of the Plan of Arrangement. In its order pursuant to section 304, the Bankruptcy Court entered a permanent injunction that ordered:

each Affected Unsecured Claim shall be settled, compromised and released in accordance with the Plan of Arrangement, and the ability of an Affected Unsecured Creditor to proceed against the Foreign Debtors in respect of an Affected Unsecured Claim *shall be forever discharged and restrained,* and all proceedings with respect to, in connection with or relating to such Affected Unsecured Claims are hereby permanently stayed ...

*See* Bankruptcy Order, Looney Decl., Ex. 3 (emphasis added).

Defendant contends that the resolution of plaintiffs claim under the Plan of Arrangement and the subsequent permanent injunction by the bankruptcy court have resolved plaintiffs' claims. Plaintiffs contend that (1) its claims were not fully satisfied by the bankruptcy proceeding; (2) defendant has not proven that its insurance deductible is $1,500; and (3) regardless, FU's value exceeds CAD$1,500 so they may still pursue an "Excluded Claim" against defendant. The Court heard oral argument on March 3, 2006, and resolves these issues as follows.

## DISCUSSION

### I. Application of the Warsaw Convention

Despite the fact that the Amended Complaint includes a claim against both defendants under the Warsaw Convention, plaintiffs' counsel represented to the Court that it is not clear whether the Warsaw Convention applies in this instance. Moreover, in previous motions, plaintiffs have acknowledged that the Warsaw Convention applies to this case and the Court has held that it does, as well. *See generally* Order Denying Defendant Continental Airlines' Motion to Dismiss (Docket # 47). In addition, the bankruptcy proceeding also involved the application of the Warsaw Convention.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

II. State Law Claims

***3** The Warsaw Convention preempts all state-law claims relating to "international transportation of persons, baggage, or goods performed by aircraft for hire."Convention art. 1(1). An air carrier is liable for damage to checked baggage or goods provided that the "occurrence which caused the damage so sustained took place during the transportation by air."*Id.* art. 18(1). The term "air transportation" includes not only the flight itself, but rather every component of "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft."*Id.* art. 18(2).

As interpreted by the courts, the Warsaw Convention preempts not only state-law claims that could be asserted under the Convention, but *all* causes of action for damage to persons or cargo suffered during international air transportation. *See*El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 174-76, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). In other words, the Convention is the exclusive source of any remedy that can be obtained in connection with an injury arising out of international air transport; if a claim cannot be asserted under the Convention, it cannot be asserted at all. *See*King v. American Airlines, Inc., 284 F.3d 352, 356-59 (2d Cir.2002) (discrimination claims preempted); Carey v. United Airlines, 255 F.3d 1044, 1048-51 (9th Cir.2001) (claim for intentional infliction of emotional distress preempted by Warsaw Convention); Brandt v. American Airlines, 2000 WL 288393, at *4 (N.D.Cal.2000) (Illston, J.) (all state-law claims preempted); Peralta v. Continental Airlines, Inc., 1999 WL 193393, at *2 (N.D.Cal.1999) (Jenkins, J.) (all state-law claims preempted).

When a plaintiff whose injuries flow from international air transportation asserts state-law claims that are "so closely related to the loss of the luggage itself as to be, in a sense, indistinguishable from it," those claims are preempted even though they may be ancillary to the event that proximately caused the damage. *See*Cruz v. American Airlines, 193 F.3d 526 (D.C.Cir.1999). In *Cruz,* plaintiffs who alleged that an airline lost their luggage were not permitted to plead a separate claim alleging that the airline wrongfully denied their lost-luggage claim. *See*id. at 531.Similarly, in Fishman v. Delta Air Lines, Inc., 132 F.3d 138 (2d Cir.1998), the Second Circuit rejected a plaintiff's attempt to plead around the Warsaw Convention by asserting a claim for tortious denial of medical care in connection with a scalding that occurred in-flight. *See*id. at 141-42.In both cases, the courts' primary concern was to avoid "tear[ing] an obvious hole in the Convention's exclusivity" as the font of all claims arising out of international air transport. Cruz, 193 F.3d at 531-32.

Here, there is no dispute that FU's disappearance occurred during "international air transportation" as that term is defined by the Convention. Plaintiffs argue, however, that Air Canada's misrepresentations concerning the care that would be taken with their cats occurred prior to the air transportation and hence is not preempted by the Convention. Similarly, plaintiffs contend that the airline's refusal to permit adequate searching for FU after his crate was discovered empty occurred subsequent to air transportation and hence is actionable under state law.

***4** The Warsaw Convention, however, would cease to be an exclusive remedy-and the Supreme Court's opinion in *El Al* would be gutted-if plaintiffs who could not assert state-law claims for the act itself were nonetheless permitted to sue under state law for ex ante representations that the act would not occur or ex post failure to redress the harm. That is the thrust of *Cruz* and *Fishman,* and the Court finds this logic persuasive. If plaintiff's argument is valid, airlines could still be liable for every representation they make regardless of the protections of the Warsaw Convention. That was not the intention of the Convention. Accordingly, all of plaintiff's causes of action collapse into its claim for breach of the Warsaw Convention.

III. Bankruptcy Court Order

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs contend that they have returned to this Court following the bankruptcy proceeding to pursue an "Excluded Claim" against Air Canada's insurer. Yet the only claim before the Court is the same claim under the Warsaw Convention against Air Canada that was adjudicated during the bankruptcy reorganization proceeding and adopted by the bankruptcy court in the Southern District of New York. Plaintiffs vehemently assert that the true, or peculiar, value of FU exceeded the deductible for which Air Canada would have been liable, thereby giving rise to a claim against Air Canada's insurer for the value of FU that exceeds CAD$1,500. In effect, however, plaintiffs argument amounts to a challenge to the damages calculation of the Monitor.

Plaintiffs submitted a claim to the Monitor as part of Air Canada's bankruptcy reorganization proceeding, received an award, were offered an opportunity to challenge the award, and declined to do so. That award was then incorporated into the Plan of Arrangement in Canada and sanctioned and confirmed by bankruptcy courts in both Canada and the United States. "A confirmed reorganization plan operates as a final judgment with res judicata effect."*See*In re Robert L. Helms Construction and Development Co., Inc., 139 F.3d 702, 704 (9th Cir.1998). Plaintiffs do not present a different *claim* here against an insurer; rather, they argue that the same claim adjudicated by the bankruptcy court should have received a different *damages* determination. That argument, however, is more appropriately filed in a bankruptcy court that sanctioned the damages determination. It is not within this Court's jurisdiction or authority to second guess another court's valuation of FU the Flying Feline; in fact, the principles and purpose of res judicata preclude the Court from doing so. If plaintiffs want to proceed with their arguments concerning FU's damages calculation, they must do so in the bankruptcy court that originally adjudicated the claim, to the extent they still can.

CONCLUSION

For the foregoing reasons, the Court hereby DISMISSES with prejudice the state law claims as preempted by the Warsaw Convention. In addition, the Court hereby DISMISSES plaintiffs' only remaining claim under the Warsaw Convention without prejudice to pursuing this action in the appropriate bankruptcy court.

***5** IT IS SO ORDERED.

N.D.Cal.,2006.
Wysotski v. Air Canada
Not Reported in F.Supp.2d, 2006 WL 581093 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

Yanovskiy v. Air France
C.A.2 (N.Y.),1999.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA2 s 0.23 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Second Circuit.
Boreslav F. YANOVSKIY, Plaintiff-Appellant,
v.
AIR FRANCE, Defendant-Appellee.
**No. 98-9055.**

April 23, 1999.

Appeal from the United States District Court for the Southern District of New York ( McKenna, J.).

Boreslav F. Yanovskiy, pro se, Brooklyn, NY, for Appellant.
James B. Mc Quillan, New York, N.Y. ( John MacCrate III, Bigham Englar Jones & Houston, on the brief) for Appellee.

Before VAN GRAAFEILAND, JACOBS, and STRAUB, Justices.

*1 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.

Boreslav F. Yanovskiy, *pro se,* appeals a judgment of the United States District Court for the Southern District of New York dismissing his claims against Air France, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. Yanovskiy had alleged claims under New York law for fraud and misrepresentation. These claims involved damage to Yanovskiy's baggage, delay in the transportation of his baggage, and the act of "bumping" Yanovskiy from one of Air France's flights. In dismissing Yanovskiy's claims, the district court found them to be governed by the terms of the Warsaw Convention, *see*49 U.S.C. § 40105 (note), and to be time-barred under the Convention's two-year time limitation on filing suit, *see id.* at Article 29(1).

A district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de novo. See Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). Thus, the Court "take[s] all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff [ ]."*Id.*

Yanovskiy does not dispute that he waited more than two years to file suit. Instead, Yanovskiy argues that the Convention's two-year time limitation does not apply, because (a) Air France employees acted willfully under Article 25(1) of the Convention, and (b) Air France failed to provide him with a proper baggage claim, as required under Article 4 of the Convention. In the alternative, Yanovskiy argues that his state law claims are outside the scope of the Convention and therefore not subject to the two-year limitation.

Although the willfulness of conduct by a carrier's employees may bar invocation of the Convention's strict monetary limits on liability, it has no such effect on the applicability of the Convention's two-year limitations period. *See, e.g., Stone v. Mexicana Airlines, Inc.,* 610 F.2d 699, 700 (10th Cir.1979). This same rationale applies to a carrier's failure to provide the passenger with a proper luggage tag.

As to Yanovskiy's alternative argument, this Court has recently held that all state law claims allegedly arising from a damaging event covered by the Convention, as well as all subsequent tortious conduct which cannot be artificially separated from the precipitating cause, are preempted by the Convention. *See Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 97 (2d Cir.1998); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138 (2d Cir.1998); *see also Husmann v. Trans World Airlines, Inc.,* 169

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 1151, 1999 WL 115212 (8th Cir. Mar.8, 1999). Such is the case here.

Accordingly, Yanovskiy's claims were properly dismissed as untimely under Article 29(1) of the Warsaw Convention.

***2** For the reasons set forth above, the judgment of the district court is AFFIRMED.

C.A.2 (N.Y.),1999.
Yanovskiy v. Air France
173 F.3d 848, 1999 WL 248126 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

York v. Day Transfer Co.
D.R.I.,2007.

United States District Court,D. Rhode Island.
Jason YORK and Maureen York, Plaintiffs,
v.
DAY TRANSFER COMPANY, Apollo Van Lines, Inc. and Andrews Express & Storage Warehouse, Inc., Defendants,
v.
Williams Moving Company, Third-Party Defendant.
**C.A. No. 04-551S.**

Nov. 20, 2007.

**Background:** Shippers of household goods brought state-court negligence action against, inter alia, transportation company and storage company after shipped household goods sustained mold damage while in storage. After action was removed, shippers amended complaint to add Carmack Amendment claims, and transportation company filed third-party complaint against its disclosed booking agent for indemnity and apportionment. Defendants moved for summary judgment.

**Holdings:** The District Court, William E. Smith, J., held that:

(1) shippers' negligence claims fell within Carmack Amendment's sphere of complete preemption, and thus were removable once shippers admitted that amount in controversy exceeded $10,000;

(2) shippers' negligence claims were preempted by Carmack Amendment;

(3) claim that transportation company was negligent in its engagement of booking agent was preempted by Carmack Amendment; and

(4) shippers' claims alleging storage company's negligence in making shippers' dwelling uninhabitable were preempted by Carmack Amendment.

Ordered accordingly.

**[1] Removal of Cases 334 ⚷111**

334 Removal of Cases
334VIII Proceedings in Case After Removal
334k111 k. Jurisdiction Acquired by United States Court in General. Most Cited Cases
Following removal of state-court action, district court was obliged to scrutinize the basis of its jurisdiction sua sponte. 28 U.S.C.A. § 1447(c).

**[2] Removal of Cases 334 ⚷18**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k18 k. Cases Arising Under Constitution of United States. Most Cited Cases

**Removal of Cases 334 ⚷19(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k19 Cases Arising Under Laws of United States
334k19(1) k. In General. Most Cited Cases
Civil action filed in a state court may be removed to federal court if at least one of the claims arises under federal law. 28 U.S.C.A. § 1441.

**[3] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases
A claim arises under federal law, such that it may be removed to federal court, when a federal question is presented on the face of plaintiff's properly pleaded complaint. 28 U.S.C.A. § 1441.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[4] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

To permit federal question removal, a federal claim must be alleged affirmatively; it is not enough that plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States. 28 U.S.C.A. § 1441.

**[5] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

Rule that federal claim must be alleged affirmatively to permit federal question removal applies with respect to defenses anticipated in a complaint that rely on the preemptive effect of a federal statute, even if both parties admit that the defense is the only question truly at issue in the case. 28 U.S.C.A. § 1441.

**[6] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

Generally, absent diversity jurisdiction, a case is not removable unless the complaint affirmatively alleges a federal claim. 28 U.S.C.A. § 1441.

**[7] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

**States 360 ⚷18.15**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

**Warehousemen 403 ⚷34(2)**

403 Warehousemen
403k34 Actions by or Against Warehousemen
403k34(2) k. Right of Action and Defenses. Most Cited Cases

Negligence claims of shippers of household goods against transportation company and storage company, which stemmed from mold damage sustained by goods while they were in storage after interstate transportation, fell within sphere of complete preemption of Carmack Amendment, governing claims arising from failures in interstate transportation and delivery of goods, and thus were removable once shippers admitted that amount in controversy exceeded $10,000. 28 U.S.C.A. §§ 1337(a), 1441; 49 U.S.C.A. § 14706(a)(1).

**[8] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

State claim may be removed to federal court, as an exception to the well-pleaded complaint rule, when a federal statute wholly displaces the state-law cause of action through complete preemption. 28 U.S.C.A. § 1441.

**[9] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

State claim may be removed to federal court, as an exception to the well-pleaded complaint rule, when Congress expressly provides for removal of such actions even when they assert only state-law claims. 28 U.S.C.A. § 1441.

**[10] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

When a federal statute completely preempts a state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law and is thus removable. 28 U.S.C.A. § 1441.

**[11] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

**States 360 ⚷18.15**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

**Warehousemen 403 ⚷34(2)**

403 Warehousemen
403k34 Actions by or Against Warehousemen
403k34(2) k. Right of Action and Defenses. Most Cited Cases

All of shippers' negligence claims against transportation company and storage company arising from mold damage sustained by shippers' household goods, while goods were in storage after being transported from Texas to Rhode Island, were subject to removal even if only one such claim fell within Carmack Amendment's sphere of complete preemption. 28 U.S.C.A. §§ 1337(a), 1367(a), 1441; 49 U.S.C.A. § 14706(a)(1).

**[12] Removal of Cases 334 ⚷15**

334 Removal of Cases
334I Power to Remove and Right of Removal in General
334k15 k. Condition of Case. Most Cited Cases

**Removal of Cases 334 ⚷102**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

334 Removal of Cases
334VII Remand or Dismissal of Case
334k101 Grounds for Remand
334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases

**Removal of Cases 334 ⚷118**

334 Removal of Cases
334VIII Proceedings in Case After Removal
334k118 k. Amendment of Pleading and Process, and Repleading. Most Cited Cases
Shippers' post-removal assertion of federal claims under Carmack Amendment, which preempted state-law claims arising from failures in interstate transportation and delivery of goods, cured any jurisdictional defect in removal of shippers' state-court negligence action against transportation company and storage company, which arose from mold damage sustained by shippers' household goods while they were in post-move storage, such that remand was not required even if Carmack Amendment did not completely preempt all of shippers' state claims. 28 U.S.C.A. § 1441(b); 49 U.S.C.A. § 14706(a)(1).

**[13] Removal of Cases 334 ⚷106**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k106 k. Waiver of Right to Remand. Most Cited Cases
By failing to seek remand within 30 days after removal of their state-court negligence action, plaintiffs waived any statutory objection to improper removal. 28 U.S.C.A. § 1447(c).

**[14] Federal Courts 170B ⚷307**

170B Federal Courts
170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
170BIV(B) Controversies Between Citizens of Different States
170Bk307 k. Time as of Which Jurisdiction Determined; Change of Citizenship Pending Suit. Most Cited Cases
A change in the citizenship of a continuing party alone cannot cure a defect in diversity jurisdiction that existed at the time of filing.

**[15] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases
Carmack Amendment provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment. 49 U.S.C.A. § 14706(a)(1).

**[16] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases
Carmack Amendment preempts state-law claims arising from failures in the interstate transportation and delivery of goods. 49 U.S.C.A. § 14706(a)(1).

**[17] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases
Carmack Amendment, with few exceptions, provides the exclusive cause of action for loss or damage to goods arising from the interstate transportation of those goods by a common carrier. 49 U.S.C.A. § 14706(a)(1).

**[18] Carriers 70 ⚷77**

70 Carriers

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

70II Carriage of Goods
70II(D) Transportation and Delivery by Carrier
70k77 k. Duties as to Transportation in General. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

Under exception to preemptive powers of Carmack Amendment, which preempts state-law claims arising from failures in the interstate transportation and delivery of goods, liability arising from separate harms, apart from the loss or damage of goods in interstate transportation, is not preempted. 49 U.S.C.A. § 14706(a)(1).

**[19] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

Preemption of state-law claims under Carmack Amendment applies not only to claims arising out of physical interstate transportation of goods, but also from the claims process itself; thus, to avoid preemption, a shipper must allege conduct on the part of the carrier that is independent from the shipping and transportation of goods, and even from the claims process that may follow. 49 U.S.C.A. § 14706(a)(1).

**[20] Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**Carriers 70 ⚷135**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k126 Actions for Loss or Injury
70k135 k. Damages. Most Cited Cases

**Damages 115 ⚷57.5**

115 Damages
115III Grounds and Subjects of Compensatory Damages
115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
115III(A)2 Mental Suffering and Emotional Distress
115k57.4 Preemption
115k57.5 k. In General. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

**Warehousemen 403 ⚷34(2)**

403 Warehousemen
403k34 Actions by or Against Warehousemen
403k34(2) k. Right of Action and Defenses. Most Cited Cases

Damages sought by shippers in their negligence action against transportation company and storage company, which included compensation for their household goods that sustained mold damage while in post-shipment storage and remuneration for being forced to leave their home for remediation of mold contamination and related expenses for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lodging, meals, and incidental costs, loss of monthly housing allowance from military, damage to one shipper's military career, and physical and emotional pain and suffering, all stemmed from shipment and delivery of mold-damaged goods, and therefore shippers' negligence claims were preempted by Carmack Amendment, which generally governed claims arising out of interstate transportation of goods. 49 U.S.C.A. § 14706(a)(1).

**[21] Carriers 70 ⚷77**

70 Carriers
70II Carriage of Goods
70II(D) Transportation and Delivery by Carrier
70k77 k. Duties as to Transportation in General. Most Cited Cases

**Carriers 70 ⚷108**

70 Carriers
70II Carriage of Goods
70II(F) Loss of or Injury to Goods
70k108 k. Nature of Liability as Common Carrier. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

Claims based on lingering and consequential effects of conduct performed in the interstate transportation, shipment, and claims process are subject to preemption under Carmack Amendment, which generally governs claims arising out of interstate transportation of goods, regardless of whether the alleged harm is to persons or to property. 49 U.S.C.A. § 14706(a)(1).

**[22] Carriers 70 ⚷77**

70 Carriers
70II Carriage of Goods
70II(D) Transportation and Delivery by Carrier
70k77 k. Duties as to Transportation in General. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

Shippers' claim that transportation company was negligent in its engagement of its booking agent to facilitate movement of shippers' property fell within scope of, and thus was preempted by, Carmack Amendment, which generally governed claims arising out of interstate transportation of goods, and which defined covered transportation services to include services related to arranging for, receipt, delivery, elevation, transfer in transit, storage, handling, packing, and unpacking of goods. 49 U.S.C.A. §§ 13102(23)(B), 14706(a)(1).

**[23] Brokers 65 ⚷38(.5)**

65 Brokers
65IV Duties and Liability to Principal
65k38 Actions for Negligence or Wrongful Acts of Broker
65k38(.5) k. In General. Most Cited Cases

**States 360 ⚷18.15**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases

Negligent brokerage claim asserted against transportation company's disclosed booking agent by shippers whose household goods sustained mold damage while in post-move storage was preempted by Carmack Amendment, which generally governed claims arising out of interstate transportation of goods, and which defined covered transportation services to include services related to arranging for, receipt, delivery, elevation, transfer in transit, storage, handling, packing, and unpacking of goods. 49

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

U.S.C.A. §§ 13102(23)(B), 14706(a)(1).

**[24] Federal Civil Procedure 170A ⚷2535**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)3 Proceedings
170Ak2535 k. Presentation of Case in General. Most Cited Cases

It is not enough for a litigant opposing summary judgment merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones; judges are not expected to be mindreaders, and a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace.

**[25] Carriers 70 ⚷77**

70 Carriers
70II Carriage of Goods
70II(D) Transportation and Delivery by Carrier
70k77 k. Duties as to Transportation in General. Most Cited Cases

**States 360 ⚷18.15**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases

**States 360 ⚷18.21**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.21 k. Carriers; Railroads. Most Cited Cases

**Warehousemen 403 ⚷34(2)**

403 Warehousemen
403k34 Actions by or Against Warehousemen
403k34(2) k. Right of Action and Defenses. Most Cited Cases

Storage company's delivery of shippers' mold-damaged household goods, which allegedly caused shippers' dwelling to become uninhabitable, was neither separate nor distinct from shipment, transportation, and claims process, and therefore shippers' claims alleging storage company's negligence in making shippers' dwelling uninhabitable were preempted by Carmack Amendment, which generally governed claims arising out of interstate transportation of goods. 49 U.S.C.A. § 14706(a)(1).

Joseph R. Palumbo, Jr., Middletown, RI, for Plaintiffs.
Carolyn P. Medina, Robert K. Taylor, Partridge, Snow & Hahn LLP, Providence, RI, for Defendants.
George W. Wright, George W. Wright & Associates, LLC, Hackensack, NJ, James P. Marusak, Gidley, Sarli & Marusak, Providence, RI, for Third-Party Defendant.

*DECISION AND ORDER*

WILLIAM E. SMITH, District Judge.

*1 Defendant Day Transfer Company ("Day") and Third-Party Defendant Williams Moving Company ("Williams") move jointly for summary judgment on all claims against them based on their interpretation of the so-called Carmack Amendment, 49 U.S.C. § 14706(a)(1), and request entry of final judgment pursuant to Fed.R.Civ.P. 54(b). Defendant Andrews Express & Storage Warehouse, Inc. ("Andrews") moves for summary judgment independently, but under the same theory of preemption. Plaintiffs Jason and Maureen York (the "Yorks") oppose both motions. After careful consideration, and for the reasons that follow, the Court will grant both motions for summary judgment, and deny as moot the request for judgment under Rule 54(b).

I

In February 2004, Jason York, a Major in the United States Marine Corps then stationed in Texas, received transfer orders to relocate to Rhode

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Island. The Yorks arranged to have their household goods shipped under the direction of the Department of Defense ("DOD"). To that end, the Joint Personal Property Shipping Office ("JPPSO"), an office within the DOD, issued a Government Bill of Lading ("GBL") for the Yorks' interstate shipment. The GBL identified Day as the responsible transportation company with instructions to store the goods in transit prior to delivery. Williams, Day's disclosed booking agent,FN1 hired Apollo Van Lines, Inc. ("Apollo") to transport the goods to Rhode Island, FN2 where Andrews would store them until the Yorks could move into their house. The goods arrived undamaged in Rhode Island on or about June 16, 2004. While in storage, however, the goods suffered considerable mold damage. Nevertheless, Andrews delivered the damaged goods to the Yorks' house on August 16, 2004, pursuant to the GBL. The damaged goods quickly befouled the living areas of the house, which the Yorks vacated pending remediation.

In October 2004, the Yorks sued Day, Apollo, and Andrews in state court, alleging several counts all sounding in negligence. The complaint did not specify damages. On November 30, 2004, Day served the Yorks with a request to admit that the amount in controversy was not above $10,000; they denied it. *See*28 U.S.C. § 1337(a) (providing that the federal district courts shall have original jurisdiction in any proceeding arising under an act of Congress regulating commerce only if the matter in controversy for each bill of lading exceeds $10,000). On December 29, 2004, Day, with the express consent of Andrews and Apollo, removed the case to the federal court. *See*28 U.S.C. §§ 1441(b), 1446(b) (providing that if the case stated in the initial pleading is not removable, a defendant may file a notice of removal within thirty days after receipt of a paper showing that the case is removable). In its notice of removal, Day posited that removal was proper due to this Court's exclusive jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), which, according to Day, preempted the Yorks' negligence claims. The Yorks did not move to remand; rather, they amended their Complaint by adding Carmack Amendment claims against each Defendant, and modifying the negligence allegations in an attempt to avoid preemption. Day then filed a third-party complaint against Williams for indemnity and apportionment. The Yorks, in turn, amended their Complaint a second time, adding a negligence count against Williams and another against Day, essentially for hiring Williams.

***2** All told, the Second Amended Complaint advances nine counts; two of them (Counts IV and V, both claims against Apollo) have since been dismissed by stipulation of the parties. (*See supra* note 2.) The seven remaining counts allege as follows: Count I (Carmack Amendment claim against Day); Count II (negligent remediation against Day); Count III (negligent brokerage services against Day); Count VI (Carmack Amendment claim against Andrews); Count VII (negligent bailee against Andrews); Count VIII (negligence in making dwelling uninhabitable against Andrews); Count IX (negligent brokerage services against Williams). Collectively, the present motions seek summary judgment on all remaining counts.

II

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997).

An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party,"*id.* at 960 (internal quotation marks and citation omitted), and an issue of fact is "material" "only when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the applicable legal tenets."Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir.1996). Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to show "an absence of evidence to support the nonmoving party's case."Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Having established this, the burden then falls upon the nonmoving party, who must oppose the motion by presenting facts that demonstrate a genuine trialworthy issue remains. Cadle, 116 F.3d at 960.This burden can be satisfied by presenting "enough competent evidence to enable a finding favorable to the nonmoving party."Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir.1993).

III

[1] Even though the Yorks did not challenge removal, this Court is obliged to scrutinize the basis of its jurisdiction *sua sponte*. *See*28 U.S.C. § 1447(c) (giving plaintiffs thirty days from removal in which to seek remand, but requiring remand "at any time before final judgment [if] it appears that the district court lacks subject matter jurisdiction"); Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 58-59 (1st Cir.2005) (remanding so that the district court could remand the case to the state court because it was improvidently removed, even though removal went unchallenged below); *see also* Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir.2004) ("Federal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion by distended judicial interpretation."). This is especially true where, as here, that basis is not readily apparent.

***3** [2][3][4][5][6] A civil action filed in a state court may be removed to federal court if at least one of the claims arises under federal law. *See*28 U.S.C. § 1441. A claim "arises under" federal law "when a federal question is presented on the face of the plaintiff's properly pleaded complaint."Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (describing this inquiry as the "well-pleaded complaint rule"); *see also* Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). Under the rule, a federal claim must be alleged affirmatively: "It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States."Mottley, 211 U.S. at 152, 29 S.Ct. 42;*see also* Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) (holding that whether the case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim ... unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose"). This includes defenses anticipated in a complaint that rely on the preemptive effect of a federal statute, "even if both parties admit that the defense is the only question truly at issue in the case."Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *see also* Ten Taxpayer Citizens Group v. Cape Wind Assoc., LLC, 373 F.3d 183, 191 (1st Cir.2004) (applying the rule to a claim of preemption under the Magnuson-Stevens Act). Thus, generally speaking, and absent diversity jurisdiction,FN3 a case is not removable unless the complaint affirmatively alleges a federal claim.

[7][8][9][10][11] In the present case, at the time of removal, the claims in the Yorks' Complaint relied exclusively on state law. This is not the end of the inquiry, however. A state claim may nevertheless be removed to federal court, as an exception to the well-pleaded complaint rule, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption."FN4Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1(2003) (involving the National

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Bank Act); *see also* Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (involving the Employee Retirement Income Security Act); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (involving the Labor Management Relations Act)."When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is thus removable under § 1441(b). *Beneficial*, 539 U.S. at 8, 123 S.Ct. 2058. Courts that have addressed this question directly agree that the Carmack Amendment completely preempts state claims based on the loss or damage of goods shipped through interstate commerce. *E.g.*, *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687-89 (9th Cir.2007); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir.2003); *cf. Rini v. United Van Lines, Inc.*, 104 F.3d 502, 507 (1st Cir.1997) (noting, outside the removal context, that "our ruling [that the Carmack Amendment preempts the plaintiff's claims] preserves the uniformity of the federal scheme by protecting the federal government's *exclusive* jurisdiction over the shipper-carrier relationship") (emphasis supplied). For reasons more fully discussed below, the Court finds that the Yorks' stated claims fall within the Carmack Amendment's sphere of complete preemption. Accordingly, those claims were removable once the Yorks admitted that the amount in controversy exceeded $10,000.FN5 *See* §§ 1337(a).

***4** [12][13][14] As an aside, the rather unique circumstances of this case present an additional and independent basis for removal jurisdiction. After Day removed the case, the Yorks amended their Complaint with three claims under the Carmack Amendment. Because the Yorks admit that the matter in controversy exceeds $10,000, § 1337(a), these claims squarely present a federal question that satisfies the "arising under" requirement of § 1441(b). Adding these claims to the Complaint would have cured any jurisdictional defect that existed at the time the case was removed. *Cf. Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75-78, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (involving the dismissal of a dispensable nondiverse party in the context of removal based on diversity of citizenship). Consequently, even if the Carmack Amendment did not completely preempt one or all of the state claims, § 1447(c) would not require remand. Nor could the Yorks challenge removal at this point (to the extent that they would); by failing to seek remand within thirty days, they have waived any statutory objection to improper removal. *Cf. Caterpillar*, 519 U.S. at 74-78, 117 S.Ct. 467 (rejecting a statutory objection to removal because the jurisdictional defect had been cured, even though the statutory objection itself had been preserved).FN6

The short of the matter is that Day's basis for removal jurisdiction was, if not fully explained, nonetheless correct.

IV

[15]Section 14706(a)(1) of Title 49 of the United States Code, routinely referred to as the Carmack Amendment,FN7 in pertinent part provides:

> A carrier providing transportation ... shall issue a receipt or bill of lading for property it receives for transportation.... That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States....

49 U.S.C. § 14706(a)(1). The Carmack Amendment "provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment."*Roberts v. N. Am. Van Lines, Inc.*, 394 F.Supp.2d 1174, 1179 (N.D.Cal.2004); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 285-86 (7th Cir.1997). Prior to its enactment, "the liability of carriers for loss of, or damage to interstate shipments was determined by common law or the law of the states."*Roberts*, 394 F.Supp.2d at 1179. Upon

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the passage of the Carmack Amendment, however, the "regulations and policies of particular States upon the subject of the carrier's liability for loss or damage to interstate shipments and the contracts of carriers with respect thereto," became superceded by federal law. *Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.,* 237 U.S. 597, 603, 35 S.Ct. 715, 59 L.Ed. 1137 (1915).

***5** [16] The principle purpose of the Carmack Amendment was "to achieve national uniformity in the liability assigned to carriers."*Rini,* 104 F.3d at 504;*see, e.g., New York, New Haven & Hartford R.R. Co. v. Nothnagle,* 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); *Atchison, Topeka & Santa Fe Ry. Co. v. Harold,* 241 U.S. 371, 378, 36 S.Ct. 665, 60 L.Ed. 1050 (1916). Through the enactment, "Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."*Rini,* 104 F.3d at 504.The Carmack Amendment exists to provide "a measure of predictability for interstate carriers in the exposure to damages they face."*Gordon,* 130 F.3d at 287.To accomplish this goal, "the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods."*Smith v. United Parcel Serv. (UPS),* 296 F.3d 1244, 1246 (11th Cir.2002).

"The notion that federal law reigns supreme and preempts state law when uniformity on a national level is required is one of long standing."*Cleveland v. Beltman N. Am. Co., Inc.,* 30 F.3d 373, 378 (2nd Cir.1994). In that vein, the preemptive scope of the Carmack Amendment is far-reaching. *See Adams Express Co. v. Croninger,* 226 U.S. 491, 505-06, 33 S.Ct. 148, 57 L.Ed. 314 (1913) (observing that the Carmack Amendment covers "[a]lmost every detail of the subject ... so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it"); *see also Se. Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (preempting a claim for negligence for failure to deliver a film reel on time); *Charleston,* 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137 (preempting a state statute that imposed a penalty on the shipper for failure to pay claims within forty days).

[17][18] The Carmack Amendment, with few exceptions, "provide[s] the exclusive cause of action for loss or damage to goods arriving from the interstate transportation of those goods by a common carrier."*Harris v. Crown Moving,* No. 07-CV-126-JLQ, 2007 WL 1724299 at *2 (E.D.Wash. June 14, 2007); *Hall,* 476 F.3d at 688.However, though "the Carmack Amendment's preemptive scope is broad, ... it is not all-inclusive."*Schwarz v. Nat'l Van Lines, Inc.,* No. 03 C 7096, 2004 WL 1166632 at *4 (N.D.Ill. May 21, 2004). Rather, there is an exception to the Amendment's seemingly overarching preemptive powers, such that "liability arising from separate harms-apart from the loss or damage of goods-is not preempted."*Rini,* 104 F.3d at 506.This exception has been embraced widely, resulting in the general rule that while "situations may exist in which the Carmack Amendment does not preempt all state and common law claims ... only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption."*Smith,* 296 F.3d at 1248-49;*see also Gordon,* 130 F.3d at 289 ("the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce"); *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 383 (5th Cir.1998).

***6** Some courts have recognized that claims for intentional torts, and specifically intentional infliction of emotional distress, may, under certain circumstances, be separate and distinct enough to escape the preemptive powers of the Carmack Amendment.[FN8] *See generally Rini,* 104 F.3d at 506 ("a claim for intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted"); *Gordon,* 130 F.3d at 286;*Hubbard v. All States Relocation Servs., Inc.,* 114 F.Supp.2d 1374, 1380 (S.D.Ga.2000); *but*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*see* Moffit v. Bekins Van Lines Co., 6 F.3d 305, 307 (5th Cir.1993) (holding that the Carmack Amendment preempts state law claims including those for intentional and negligent infliction of emotional distress); Glass v. Crimmins Transfer Co., 299 F.Supp.2d 878, 887 (C.D.Ill.2004) (where claims for emotional distress and personal injury "arose directly from the carrier's mis-handling of the property and the subsequent claims," preemption applied). However, there is little explicit guidance as to what other claims may reside outside the reach of the Amendment.

[19] Based on the reasoning in *Rini,* the Carmack exception is a narrow one, as preemption applies not only to claims arising out of the physical transport of goods, but also from the claims process itself. *Rini,* 104 F.3d at 506 (Carmack preemption covers "all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims"). Thus, to avoid preemption a party must allege conduct on the part of the carrier that is independent from the shipping and transportation of goods at issue, and even from the claims process that may follow-something akin to an allegation of assault and injury inflicted by the carrier upon the shipper. *Rini,* 104 F.3d at 506;*see also Smith,* 296 F.3d at 1249 ("separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment"); *Roberts,* 394 F.Supp.2d at 1180 ("the Carmack Amendment preempts claims based on loss or damage to goods shipped in interstate commerce while claims based on *conduct* separate and distinct from the delivery, loss of, or damage to goods survive preemption") (emphasis added).

[20] Plaintiffs argue that the harms complained of in the Second Amended Complaint occurred after the goods arrived at their new Rhode Island home, that the harms were to the Yorks themselves, personally and financially, rather than to their transported items, and that as a result, preemption does not apply. However, Plaintiffs do not present evidence of any conduct separate and apart from the transport of their goods and from the claims process undertaken by the parties after the delivery of the moldy goods.FN9Rather, Plaintiffs seek compensation for their damaged items, and remuneration in the form of "damages for the forced abandonment of their home; expenses for lodging, meals and associated incidental costs; the loss of their monthly housing allowance from the military; damage to Major York's military career; and physical and emotional pain and suffering."As discussed below, such damages stem directly from the shipment and delivery of their goods, and as such, fall under the Carmack umbrella.

***7** Under a set of facts akin to those alleged here, the Court in *Glass,* 299 F.Supp.2d at 883, 890, granted summary judgment to the defendant carriers on the shippers' claims for breach of contract, fraudulent concealment, and negligence, as well as claims for emotional distress, personal injury, and punitive damages. There, the plaintiffs contracted with a mover, who in turn designated an agent for transportation and other moving services. That agent packed the plaintiffs' goods, moved them to a storage facility, and eventually transported the goods to plaintiffs' new home. While in storage, the plaintiffs' goods were damaged or destroyed by flooding in the warehouse which caused mold, mildew, and fungus to envelop the plaintiffs' goods. Over a year later, the plaintiffs' goods were moved into their new home by defendants, where the damage was evident to both the plaintiffs and to the defendant movers. Despite this, the items remained in the home for an unspecified period, and as a result, the plaintiffs sought damages for both the damaged items and for health problems allegedly resulting from the mold and mildew contamination. Based on the facts alleged, the court concluded that all of the plaintiffs' non-Carmack claims were preempted, as they "ar[o]se directly from and [were] based solely upon loss of and/or damage to the property that the [plaintiffs] consigned to the defendants for shipment."*Id.* at 887.Because the plaintiffs' claims arose directly out of the contractual relationship between shipper and carrier, no viable tortious conduct existed independent of the shipment, and preemption governed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In a similar case of mold-contamination, the court in Tayloe v. Kachina Moving & Storage, Inc., 16 F.Supp.2d 1123 (D.Ariz.1998) granted summary judgment on the plaintiff-shippers' state law claims for negligence and breach, where plaintiffs sought actual and consequential damages for mold-related decontamination and personal injury resulting from the delivery of goods that had become wet and moldy in transit. In that case, while the court did not address the issue of whether the "separate and distinct" exception to Carmack preemption applied, it nonetheless explicitly held that the plaintiffs' claims "ar[o]se out of the interstate transportation of their household goods," and thus dismissed the claims. *Id.* at 1128.The *Tayloe* court refused to grant summary judgment on the plaintiffs' claim for special and consequential damages, finding there to be a triable issue of fact "as to whether Defendants were put on notice of the need to take special precautions with respect to the transportation and storage" of the plaintiffs' goods. *Id.* at 1129.There, the plaintiffs allegedly gave specific notice to the defendants of Mrs. Tayloe's allergies and the need to be particularly careful in the transport and storage of their goods so as to avoid exposure to mold and other allergens. Because Plaintiffs here have failed to allege any facts sufficient to raise such a notice issue, the scenario is inapplicable to this case.

***8** [21] Plaintiffs here seem to rest on their belief that because the harm alleged goes beyond physical damage and destruction to their goods and furniture, their claims fall outside the preemptive scope of the Carmack Amendment. However, as the above cases reveal, courts consistently have found that Carmack preemption covers nearly all damages arising out of the transportation and claims process. Claims such as those in *Tayloe* and *Glass,* based on lingering and consequential effects of conduct performed in the transportation, shipment, and claims process are subject to preemption, regardless of whether the alleged harm is to the person or to the property. *See also* *Strike v. Atlas Van Lines, Inc.,* 102 F.Supp.2d 599, 601 (M.D.Pa.2000) (where gasoline spilled on goods during transport and exposed shippers to noxious fumes causing lingering health problems, and where damages went beyond the loss of or value of the property itself, plaintiffs' claims were "not separate from the matter of the alleged damage or injury to the goods," and thus were within the scope of the Carmack Amendment); *Power Standards Lab. Inc. v. Fed. Express Corp.,* 127 Cal.App.4th 1039, 1048, 26 Cal.Rptr.3d 202 (2005) (Carmack preemption applies to allegations stemming from "how the carrier handles claims for damage to the shipper's property"); *Allessandra v. Mullen Bros., Inc.,* No. 98-5967, 1999 WL 959684 (Mass.Super.Ct. Sept. 22, 1999) (dismissing shipper's claims, in reliance on *Rini,* where plaintiff suffered disabling health problems as a direct result of pesticide that had been spilled on her belongings while in storage by the defendant mover, and finding that because the plaintiff's injuries were so closely related to the performance of the shipping contract, preemption applied).

[22][23][24] None of the facts alleged by Plaintiffs give rise to conduct or harm sufficiently separate and distinct from the shipment and claims process as to warrant exemption from the preemptive reach of the Carmack Amendment. As to Defendant Day, Plaintiffs have alleged both negligent remediation (Count II) and negligent broker liability (Count III). As to the negligence claim, it is well established that causes of action arising out of the claims process are covered by the Carmack Amendment; likewise, while Plaintiffs allege Day to have been negligent in its engagement of Williams Moving to facilitate the movement of the Yorks' property, their attempt to circumvent the Carmack Amendment fails. The role played by Day clearly falls within the Carmack Amendment, particularly where the Amendment defines covered transportation services as being "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, ... storage, handling, packing, [and] unpacking."*See*49 U.S.C. § 13102(23)(B); *see also* *Glass,* 299 F.Supp.2d at 884 (Carmack Amendment covered the services of United Van Lines, whose sole role was to engage agents for transportation and related services). Thus, any allegation that Day served any role other than as a covered carrier, is without merit. Inasmuch as the Plaintiffs have asserted a claim for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

negligent brokerage against Defendant Williams (Count IX), the disclosed agent of Day, the same reasoning applies.FN10

***9** [25] As to Defendant Andrews, Plaintiffs allege negligence as bailee (Count VII) and negligence in making the dwelling uninhabitable (Count VIII). Plaintiffs provide no legal or factual support for their claim that Andrews owed to Plaintiffs any separate duties as a bailee. While some courts have recognized that "carriers may be liable to shippers in tort for incidental harms associated with the loss or damage of cargo,"*Id.* at 886 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir.1996)), including liability of a bailee to its bailor, such claims are viable only if the "claim for relief does not depend upon existence of a contract."*Id.*;*Starmakers Publ'g Corp. v. Acme Fast Freight, Inc.*, 615 F.Supp. 787, 791 (S.D.N.Y.1985). Here, the only duty allegedly breached was the duty to exercise care in the storage and delivery of Plaintiffs' goods, conduct clearly within the ambit of the Carmack Amendment, and clearly part and parcel of the contract entered into by Plaintiffs for the shipment of their property. Plaintiffs' negligence claim against Andrews fails for all the reasons described above, as the delivery by Andrews of Plaintiffs' goods, the conduct which allegedly caused the dwelling to become uninhabitable, is neither separate nor distinct from the shipment, transportation, and claims process.

Having declared Plaintiffs' common law claims against Defendants Day, Andrews, and Williams preempted by the Carmack Amendment, this Court moves to Plaintiffs' Carmack claims against Defendants Day (Count I) and Andrews (Count VI). Defendants have moved for summary judgment on all Counts in the Second Amended Complaint, including those brought under the Carmack Amendment. Plaintiffs fail to address Defendants' assertions as to those claims. Furthermore, while Day seeks summary judgment limiting Plaintiffs' recovery to contractually agreed-upon $15,000, Andrews asserts that the Carmack claims should be barred as a matter of law because Plaintiffs' have already received the maximum recovery possible under the Carmack Amendment, and because Andrews, as Day's agent, cannot be held liable to Plaintiffs for any harm to themselves or their goods.

Plaintiffs have neither responded to nor rebutted Defendants' legal and factual assertions as to the Carmack claims. Therefore, this Court finds that Plaintiffs' claims against Defendants Day and Andrews are limited to $15,000, based on the per pound released valuation terms of the agreement into which the Yorks voluntarily entered. However, based on the parties' submissions, it is not entirely clear whether such amounts already have been paid to the Yorks in satisfaction of their Carmack claims. Defendants Day and Williams assert that as of September 2004, they made payments to the Yorks totaling $10,696.24, whereas Defendant Andrews claims to be free of liability due to Defendant Williams having already paid $15,000 on account of damage to the Yorks' goods.FN11 Plaintiffs fail to assert any facts relating to payments received from any of the Defendants.

***10** Irrespective of these discrepancies, and based upon the above, the Court Orders as follows: 1) Defendants' liability for the harm alleged by Plaintiffs is limited by the Carmack Amendment; 2) For the reasons stated above, Defendants' liability under the Carmack Amendment is capped at $15,000; 3) Defendant Day is liable to Plaintiffs in the amount of $15,000 based upon its stipulation to the entry of Final Judgment against it; FN12 and 4) Any payments already made by Defendants may be credited against said $15,000.

It is so ordered.

FN1. Under an existing agreement, Williams was responsible for arranging shipments from the Yorks' military installation on Day's behalf.

FN2. Apollo was dismissed from this case with prejudice pursuant to a stipulation of the parties.

FN3. At least two of the parties (the Yorks

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and Andrews C both citizens of Rhode Island) were nondiverse, foreclosing removal based on diversity of citizenship. *See* Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 58 (1st Cir.2005) (holding that diversity of citizenship is not a basis for removal unless diversity is complete; "that is, when no plaintiff is a citizen of the same state as any defendant").

FN4. The only other exception is when Congress expressly provides for removal of such actions even when they assert only state-law claims. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484-85, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (involving the Price-Anderson Act, which contains an unusual preemption provision). However, the Carmack Amendment contains no such language, so this exception does not apply.

FN5. Of course, if only one of the state claims fell within this sphere of complete preemption, the other claims would still be removable under 28 U.S.C. 1367(a).*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 n. 3, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (explaining that state claims can be removed under the supplemental jurisdiction statute as long as another claim in the complaint is removable).

FN6. Under the circumstances of this case, a similar "fix" is unavailable under the diversity statute. True, the Yorks moved to Alabama after filing the original Complaint (thus restoring complete diversity), but a change in the citizenship of a *continuing* party alone cannot cure a jurisdictional defect that existed at the time of filing. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574-75, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). Moreover, Andrews appears to be an indispensable party; it therefore cannot be dismissed under Fed.R.Civ.P. 21. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-38, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (recognizing that federal courts may dismiss a dispensable nondiverse party from a case under Rule 21 to preserve diversity jurisdiction); *see also DCC Operating, Inc. v. Siaca (In re Olympic Mills)*, 477 F.3d 1, 8-12 & n. 10 (1st Cir.2007) (involving the intervention of a dispensable nondiverse party).

FN7. Formerly 49 U.S.C. § 11707(a)(1).

FN8. Despite peppering their briefs with references to allegedly "intentional" acts committed by the Defendants, Plaintiffs' Second Amended Complaint is devoid of any intentional claims. As such, this writer will not address whether Defendants' allegedly intentional conduct falls outside the preemptive scope of the Carmack Amendment.

FN9. In their opposition briefs, Plaintiffs state that the harms alleged "are harms to the Yorks personally *as a consequence* of the defendants' delivery of the moldy goods into the Yorks' home," and that their claims "are based on defendants' *actions in delivering the mold damaged goods* to the York residence after they knew the goods were damaged."(Emphasis added.) These assertions are at odds with Plaintiffs' argument that the harms alleged stem from conduct separate and distinct from the transportation process.

FN10. Despite asserting negligent brokerage claims against both Defendants Day and Williams, and a negligent bailee claim against Defendant Andrews, Plaintiffs fail to provide support for or develop any legal argument on these points. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Massey v. Stanley-Bostitch, Inc.,* 255 F.Supp.2d 7, 16 (D.R.I.2003). Plainly, "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace."*Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (internal quotation marks and citation omitted). Here, Plaintiffs failed in their obligation to research, develop, and assert any argument as to the negligent brokerage and bailee claims, and it is not this Court's role to "cast about blindly" for a basis upon which to deny Defendants' summary judgment motion as to these claims. *See Hadaja, Inc. v. Evans,* 263 F.Supp.2d 346, 353 (D.R.I.2003).

FN11. In its papers, Defendant Day has agreed to the entry of Final Judgment against it in the amount of $15,000 on the Carmack Amendment claims.

FN12. While Plaintiffs did not challenge Defendant Andrews' argument as to its liability-limiting status as Day's agent, this Court need not address the issue, as Day's assumption of Carmack liability over Plaintiffs' claims renders the issue moot.

D.R.I.,2007.
York v. Day Transfer Co.
--- F.Supp.2d ----, 2007 WL 4199600 (D.R.I.), Fed. Carr. Cas. P 84,519

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.